FRANCISCO FELICIANO, tercerista y apelado, *v.* PABLO CEDEÑO, S. en C., demandante y apelante, *v.* LUIS FELICIANO BORRERO y su esposa NÉLIDA CEDEÑO SANTIAGO, demandados y apelados.

Número 11009.
*Sometido:* 1 de febrero de 1954. *Resuelto:* 28 de febrero de 1955.

*Agustín E. Font,* abogado de la apelante; *José I. Fernández Se-garra,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

Don Francisco Feliciano presentó una tercería de bienes muebles contra la mercantil Pablo Cedeño, S. en C., acreedora embargante en la acción original, y don Luis Feliciano y su esposa doña Nélida Cedeño Santiago, deudores demandados en la acción original, en cuya tercería don Francisco Feliciano reclama como de su propiedad, cierta mercadería embargada por la mercantil Pablo Cedeño, S. en C., como propiedad de don Luis Feliciano y su esposa doña Nélida Cedeño Santiago. Contestó la mercantil Pablo Cedeño, S. en C., aceptando el hecho del embargo pero alegando en contrario que los bienes embargados pertenecían a don Luis Feliciano y su esposa doña Nélida Cedeño, quienes maliciosamente y con la intención de defraudar a sus acreedores, valiéndose de falsas y fraudulentas simulaciones utilizaron indebidamente el nombre de don Francisco Feliciano, padre de dicho don Luis Feliciano para que apareciera como dueño de dichos bienes.

Después de un laborioso juicio sobre los hechos, el tribunal sentenciador llegó a las siguientes conclusiones de hecho:

"1.—Que con fecha 21 de marzo de 1950 el Márshal de esta Corte cumplimentó orden de embargo sobre los bienes que se detallan en la demanda, en el caso Civil R-10,824 de la misma Corte seguido por Pablo Cedeño, S. en C. v. Luis Feliciano Borrero y su esposa Nélida Cedeño;

"2.—Que el embargo se practicó en mercancía que estaba en una tienda en los bajos de la casa propiedad de Augusto Pierantoni;

"3.—Que según factura, Francisco Feliciano, compró en el almacén de Luis Maldonado mercancía por $131.44 y abonó $110, en 6 de marzo de 1950, cuyo asiento aparece al folio 266 del libro, borrador de la tienda de Luis Maldonado y en la libreta de notas o facturas correspondientes;

"4.—Que en 11 de marzo de 1950 aparece otra compra a Luis Maldonado del referido Francisco Feliciano por $86.76 y en el libro borrador aparece un cargo al folio 269 por una lata de mantequilla de 5 libras también;

"5.—Que en 20 de marzo de 1950, también aparecen dos notas por mercancía para Francisco Feliciano, y en el libro borrador al folio aparece anotada también una factura;

"6.—Que en fechas posteriores al embargo que se efectuó en 21 de marzo de 1950, aparecen facturas y anotaciones en el libro borrador de Luis Maldonado.

"7.—Que también aparecen varios originales de facturas de Luis Maldonado a Francisco Feliciano fechados con anterioridad al 21 de marzo de 1950;

"8.—Que en 16 de marzo de 1950, Celso Flores, le vendió a Francisco Feliciano mercancía y la misma le fué pagada por Cruz Feliciano, quien resulta ser la persona que atiende el negocio donde se embargaron los bienes; así como recibos de entrega de pan los que aparecen firmados por Cruz Feliciano a nombre de Francisco Feliciano quien no sabe leer y escribir;

"9.—La patente Municipal se expidió en 15 de marzo de 1950 a favor de Francisco Feliciano, y según se declaró la misma fué sacada por Luis Feliciano;

"10.—El comprobante de pago por la patente se expidió a nombre de Francisco Feliciano, en 15 de marzo de 1950;

"11.—También aparecen otros documentos tales como contratos de venta condicional de propiedad, y borderós a nombre de Francisco Feliciano, fechados con anterioridad al 21 de marzo de 1950, y en algunos de estos documentos aparece como testigo de los signos y/o marcas de Francisco Feliciano, el co-demandado Luis Feliciano quien es hijo del demandante y cuñado de Pablo Cedeño por estar casado con una hermana de éste;

"12.—Que a pesar de lo declarado por Augusto Pietrantoni, y a lo cual la corte dió crédito, sin embargo su testimonio fué desmentido, desvirtuado y contradicho por documentos suscritos por él, tales como la Declaración de Inscripción de Local Comercial ante la Oficina de Administración de Precio de fecha 19 de

marzo de 1950, en que aparece alquilando un local a Francisco Feliciano, la orden fijando alquiler máximo provisional, y el inventario de bienes a ser comprados por Francisco Feliciano (Exh. 11 del demandante) y sobre cuyos extremos la corte no pudo darle crédito, ante el contenido de dichos documentos;

"13.—Que la prueba documental y testifical de la parte demandante, establece que Francisco Feliciano con anterioridad al embargo realizó compras y estableció una tienda en los bajos de Augusto Pierantoni.

"14.—Que la prueba del demandado Pablo Cedeño, S. en C., aun cuando levanta sospechas de fraude o colusión, sin embargo, no es suficiente en derecho para así establecerlo y poderlo concluir la corte, de acuerdo a la jurisprudencia imperante, por lo que no puede declarar sin lugar la acción de tercería."

No conforme con la sentencia dictada en su contra la acreedora embargante apeló ante este Tribunal, señalando los siguientes errores: (1) "el tribunal a quo cometió manifiesto error en la apreciación de la prueba", y (2) "el tribunal a quo cometió manifiesto error en la aquilatación de la jurisprudencia."

■■ En cuanto al primer error relacionado con la apreciación de la prueba, se trata de un caso donde hay dos versiones distintas de los hechos: la versión del acreedor embargante en el sentido que el nuevo establecimiento embargado, que se alega ser propiedad del tercerista, era propiedad del deudor embargado señor Luis Feliciano quien lo único que hizo fué trasladar al nuevo establecimiento las mercaderías que tenía en otros establecimientos y la versión del tercerista en el sentido que el nuevo establecimiento era totalmente suyo. Como se ve está envuelto en el caso un evidente conflicto en la evidencia y al resolverlo el tribunal sentenciador lo único que hizo fué ejercer su tradicional facultad de darle crédito a aquella parte de la evidencia que resultó más convincente para su conciencia de juzgador. Las conclusiones de hecho están sostenidas por la prueba y por lo tanto no podemos intervenir con ellas, a menos que no estuviéramos totalmente convencidos que son claramente erróneas.

■■ En cuanto al segundo error relacionado con la aplicación correcta de la jurisprudencia prevaleciente sobre el carácter de la prueba en caso de fraude, el mismo descansa fundamentalmente en la resolución del primer error. Es un principio jurídico universalmente reconocido, que el fraude no se presume nunca, o sea, que el fraude no puede tener una base puramente conjetural. De cualquier hecho probado se puede extraer una conjetura contraria a su ocurrencia natural o lógica. Cuando el mismo hecho es suceptible de dos interpretaciones antitéticas entre sí, una de ellas no puede utilizarse para probar el fraude: *Calzado et al.* v. *Carrero, et al.*, 15 D.P.R. 363 (*MacLeary*), (1909), cita precisa a la pág. 369; *Lamas et al.* v. *Roig*, 15 D.P.R. 494 (*Wolf*), (1909), cita precisa a la pág. 498; *Cruz* v. *López*, 17 D.P.R. 42 (*Wolf*), (1911), cita precisa a la pág. 47; *Sucn. Igaravidez et al.* v. *Rubert Hnos. et al.*, 23 D.P.R. 293 (*Wolf*), (1915), cita precisa a la pág. 304; *Ana María Sugar Co.* v. *Castro et al.*, 28 D.P.R. 241 (*Wolf*), (1920), cita precisa a las págs. 257 y 258; *Sucn. Cayere* v. *Monell*, 40 D.P.R. 936, (*Aldrey*), (1930), cita precisa a la pág. 940; *González* v. *Rivera*, 42 D.P.R. 313, (*Texidor*), (1931), cita precisa a la pág. 318; *Sucrs. de L. Villamil & Co.* v. *Pacheco*, 48 D.P.R. 846 (*Aldrey*), (1935), cita precisa a la pág. 849; *Roca* v. *Thomson*, (*Ortiz*), (1954) 77 D.P.R. 419.

■■ Pero aquí no estamos ante esta probabilidad. En este caso se trata de dos hechos distintos, probados ambos con una evidencia, que hasta cierto extremo, resulta independiente la una de la otra, en cuyo caso, la conclusión del juez, excluye no sólo la posibilidad del fraude directamente establecido por prueba presentada a tal efecto, sino la conjetura fraudulenta que se pueda inferir de los hechos considerados como probados por el juez sentenciador. Para considerar las posibles implicaciones fraudulentas de los hechos probados en su totalidad tendríamos que empezar por dejar sin efecto, las conclusiones de hecho formuladas por el juez sentenciador

en su soberana apreciación de la prueba. Sólo en caso de una ausencia total de prueba o de un claro error en la apreciación de la misma, tendríamos nosotros esa facultad.

*Debe confirmarse la sentencia apelada.*