EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Carmen Lilliam Corraliza Rodríguez<br>    Demandante-Peticionaria<br><br>       v.<br><br>Banco Desarrollo Económico para Puerto Rico y otros<br>    Demandados-Recurridos | Certiorari<br><br>2001 TSPR 2 |

Número del Caso: CC-1999-384

Fecha: 9/enero/2001

Tribunal de Circuito de Apelaciones:

                Circuito Regional I

Juez Ponente:

                Hon. José M. Aponte Jiménez

Abogado de la Parte Peticionaria:

                Lcdo. Luis Roberto Piñero

Abogados de la Parte Recurrida:

                Lcdo. Enrique R. Adames Soto<br>
                Lcdo. Juan Diego García Chamorro<br>
                Lcdo. Edgardo Muñoz Maldonado

Oficina del Procurador General:

                Lcdo. José Reyes Cardona<br>
                Lcdo. Alejandro López Lorenzo<br>
                División de Litigios Generales

Materia: Discrimen en el Empleo

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carmen Lilliam Corraliza
Rodríguez

    Demandante-Peticionaria

       vs.                           CC-1999-384        Certiorari

Banco Desarrollo Económico
para Puerto Rico y Otros

    Demandados-Recurridos

SENTENCIA

San Juan, Puerto Rico, a 9 de enero de 2001.

En el caso de autos, la peticionaria Carmen L. Corraliza Rodríguez presentó una demanda por discrimen en el empleo contra el Banco de Desarrollo Económico de Puerto Rico y varios de sus funcionarios.

El Banco contestó la demanda, y luego solicitó su desestimación. Alegó específicamente que procedía la incorporación en nuestra jurisdicción de las doctrinas de "equitable estoppel" y "judicial estoppel", conforme a las cuales procedía la desestimación de la demanda referida porque la peticionaria demandante se había acogido a un procedimiento de quiebra en el foro federal y no

había incluido la demanda en cuestión en el correspondiente inventario de activos.

El 15 de septiembre de 1998 el Tribunal de Primera Instancia acogió el planteamiento del Banco demandado y dictó sentencia mediante la cual desestimó las reclamaciones de daños de la peticionaria.

El 21 de abril de 1999, el Tribunal de Circuito de Apelaciones confirmó el dictamen de instancia, luego de modificar sus fundamentos. Resolvió que aunque la doctrina de "equitable estoppel" no era aplicable al caso de autos, la de "judicial estoppel" sí lo era, por lo que procedía sólo sobre esa base la desestimación de la demanda por daños de la peticionaria.

Inconforme con tal dictamen, la peticionaria acudió en revisión ante nos oportunamente y alegó que no procedía la adopción en Puerto Rico de la doctrina de "judicial estoppel" como lo había hecho el foro apelativo en el caso de autos.

El 16 de julio de 1999 expedimos el recurso solicitado para revisar el dictamen del foro apelativo. El 23 de noviembre de 1999 la peticionaria presentó su alegato, y el 23 de diciembre del mismo año, el Banco presentó el suyo.

Luego de examinar las comparecencias de ambas partes, que discuten sus razones a favor y en contra de la adopción en Puerto Rico de las doctrinas de "equitable estoppel" y de "judicial estoppel" en casos como el de autos, procedemos a resolver.

Por distintos fundamentos, una mayoría del Tribunal coincide en que procede que se revoquen las sentencias del Tribunal de Circuito de Apelaciones y del Tribunal de Primera Instancia en el caso de autos, y en que se devuelva el caso al foro de instancia para que continúen allí los procedimientos y se consideren en sus méritos todas las reclamaciones de la parte demandante.

Lo pronunció, manda el Tribunal y certifica la Subsecretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió una opinión de conformidad a la que se unió la Juez Asociada señora Naveira de Rodón. El Juez Asociado señor Rebollo López emitió una opinión concurrente. El Juez Presidente señor Andréu García y el Juez Asociado señor Corrada del Río no intervinieron.

Carmen E. Cruz Rivera
Subsecretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carmen Lilliam Corraliza
Rodríguez

    Demandante-Peticionaria

        vs.                     CC-1999-384       Certiorari

Banco Desarrollo Económico
para Puerto Rico y Otros

    Demandados-Recurridos

Opinión de conformidad emitida por el Juez Asociado señor FUSTER BERLINGERI, a la cual se une la Juez Asociada señora NAVEIRA DE RODON.

San Juan, Puerto Rico, a 9 de enero de 2001.

Por las razones que se explican más adelante, estamos conforme con la sentencia del Tribunal en el caso de autos. En particular, examinamos, _inter alia_, si es menester que en el caso de autos adoptemos en nuestra jurisdicción las doctrinas de origen anglosajón conocidas como "judicial estoppel" y "equitable estoppel".

I.

El 30 de septiembre de 1996, Carmen L. Corraliza Rodríguez (la peticionaria) presentó una demanda por discrimen en el empleo contra el Banco de Desarrollo Económico de Puerto Rico (el Banco) y

varios de sus funcionarios en su carácter oficial y personal. Alegó que fue despojada ilegalmente de su derecho propietario sobre su empleo permanente y de carrera, al efectuarse una "reestructuración" de los puestos en la institución por su patrono, el Banco, en la cual se le asignó un cargo de menor jerarquía, complejidad y responsabilidad que el que tenía antes.

En concreto, la peticionaria alegó que entre los meses de abril a octubre de 1995, el Banco había llevado a cabo un proceso unilateral e ilegal de "reestructuración" en virtud del cual se había eliminado su puesto de carrera como Oficial Administrativo II, y se le había asignado a un puesto inferior. Adujo que tal acción se tomó en represalia por su impugnación a la "reestructuración" realizada por el Banco y por razón de su afiliación política. Solicitó que se declarase nulo el plan de "reestructuración" referido y que se ordenase a los demandados a cesar y desistir de sus acciones discriminatorias. Solicitó, además, su reposición en su puesto original, el pago de salarios dejados de devengar, así como la indemnización por los daños y perjuicios sufridos.

El 17 de octubre de 1996, el Banco contestó la demanda y negó las alegaciones. Casi dos años más tarde, el 6 de agosto de 1998, el Banco presentó una solicitud de sentencia sumaria mediante la cual solicitó la desestimación de la acción instada en su contra. Arguyó entonces que procedía la incorporación en nuestra jurisdicción de las doctrinas de "equitable estoppel" y "judicial estoppel", cuya aplicación a este caso conllevaba la desestimación de la demanda aludida. Alegó que la demandante se había acogido a un procedimiento de quiebras que aún estaba pendiente para la fecha en que presentó la demanda del caso de autos, y que nunca cumplió con su obligación de incluir dicha acción en el correspondiente inventario de activos.

En efecto, la demandante se había acogido a los beneficios de la Ley de Quiebras federal el 24 de noviembre de 1992. El plan de reorganización en el procedimiento de quiebra fue aprobado el 24 de agosto de 1993 y se decretó su cierre el 29 de junio de 1998. Es un hecho no controvertido que con respecto al procedimiento referido la demandante nunca enmendó el inventario de sus activos ni tampoco la planilla correspondiente ("schedules") para incluir en ellos la demanda del caso de autos, que fue presentada mientras aún estaba pendiente el caso de quiebras.

El 8 de septiembre de 1998, la demandante presentó una moción en oposición a la solicitud de sentencia sumaria del Banco. Argumentó que la jurisprudencia invocada por éste no era vinculante en nuestra jurisdicción y que, aun si se adoptasen las referidas doctrinas, era necesario probar que la parte contra la cual se invocan había cometido fraude o que actuó de mala fe.

El 15 de septiembre de 1998, notificada el día 17 del mismo mes, el Tribunal de Primera Instancia dictó una sentencia parcial mediante la cual acogió los fundamentos doctrinales expuestos por el Banco y desestimó todas las reclamaciones relacionadas con la solicitud

del resarcimiento por los daños ocasionados.  Además, ordenó la continuación de los procedimientos en cuanto a las reclamaciones de restitución en el empleo y pago de salarios.

El 30 de noviembre de 1998, la demandante recurrió al Tribunal de Circuito de Apelaciones mediante un recurso de apelación.  En esencia, planteó que el tribunal de instancia había errado al desestimar las reclamaciones de daños sin que se hubiese demostrado la comisión de fraude o la actuación de mala fe.

El 21 de abril de 1999, notificada el día 26 del mismo mes, el foro apelativo dictó una sentencia mediante la cual confirmó el dictamen del Tribunal de Primera Instancia. Dicho foro determinó que la doctrina de "equitable estoppel" no era aplicble al caso de autos, pero resolvió que la de "judicial estoppel" sí lo era. Determinó que procedía adoptar la doctrina de "judicial estoppel" limitándola a casos como el de autos en el cual una parte había omitido informar a la Corte de Quiebras federal una acción pendiente ante un tribunal estatal como parte de su caudal. Señaló el foro apelativo que la omisión de Corraliza Rodríguez 'constituye una conducta inconsistente al intentar ejercer posteriormente ese mismo reclamo que omitió. Semejante proceder lo impide la doctrina de "judicial estoppel".'

El 26 de mayo de 1999, la demandante presentó ante nos el presente recurso de certiorari. En esencia, cuestionó la corrección del dictamen del Tribunal de Circuito de Apelaciones que confirmó el del foro de instancia. Adujo que se había adoptado por primera vez una norma judicial ajena a nuestro ordenamiento jurídico; y que ésta se había aplicado retroactivamente, en contravención a nuestra jurisprudencia previa, todo ello sin que se probara la comisión de fraude al tribunal o la mala fe, y sin la celebración de una vista evidenciaria para dilucidar la existencia de los elementos de intención necesarios para probar la alegada conducta fraudulenta o la mala fe.

El 16 de julio de 1999, expedimos el recurso. El 23 de noviembre de 1999, la peticionaria presentó su alegato y el 23 de diciembre del mismo año, el Banco presentó el suyo.  Con el beneficio de la comparecencia de ambas partes procedemos a examinar el asunto ante nos.


II.

Recientemente, en Allende Pérez v. García, opinión del Tribunal de 28 de abril de 2000, 150 D.P.R. ___, 2000 T.S.P.R. 66, 2000 JTS 78, resolvimos que "una causa de acción por discrimen en el empleo, **que existía al momento de acogerse el deudor al procedimiento de quiebras**, forma parte del caudal en quiebra y el deudor tiene que incluirla en el inventario; **no teniendo capacidad el deudor para presentar la acción**, a menos que la causa se determine exenta, o el síndico la abandone." Señalamos claramente que si "la causa de acción **surgió antes de comenzar el procedimiento de quiebra**" entonces el deudor "carecía de capacidad para presentarla. Si, por el contrario, ...la causa de acción **surgió con posterioridad al comienzo del procedimiento de quiebra**," entonces sería el deudor quien tendría capacidad para presentarla, y no el síndico del caudal en quiebra.

En el caso de autos, la acción de la peticionaria se presentó casi cuatro años después de haberse iniciado el procedimiento de quiebra, fundada en hechos que ocurrieron más de dos años después de haberse iniciado dicho procedimiento. No cabe duda alguna, y así lo admiten los propios recurridos, de que la acción por discrimen en el empleo de la peticionaria surgió mucho después de haberse ésta acogido al procedimiento de quiebra. Por ende, no le competía al síndico presentar la acción referida; en cambio, la peticionaria referida sí tenía capacidad para presentar dicha acción, conforme a lo resuelto en Allende Pérez v. García, supra.

Sin embargo, en el caso de autos el patrono demandado no ha planteado que la peticionaria carecía de legitimación activa para llevar a cabo la causa de acción por discrimen político, como sucedió en Allende Pérez v. García, supra. Allí el patrono demandado impugnó la acción del empleado, por entender que dicha acción sólo podía ser incoada por el síndico del caudal en quiebra, como única parte con interés, por lo que el empleado deudor carecía de capacidad para demandar. En el caso de autos, la desestimación de la demanda solicitada por el patrono se ampara en un **fundamento distinto** al de Allende Pérez v. García, supra. Se aduce que la causa de acción debe ser desestimada por **razones de equidad**. En concreto, aducen los recurridos que no debe permitirse que la peticionaria presente la acción en controversia, no porque carezca de legitimación activa para ello, sino porque su alegada omisión al no informar dicha causa de acción a la Corte de Quiebras federal constituye un proceder **inconsistente** con la acción por discrimen en el empleo, por lo que permitir que se presente tal acción constituiría un abuso inaceptable de los procedimientos judiciales. Los recurridos alegan que las doctrinas conocidas como "judicial estoppel" y "equitable estoppel", ninguna de las cuales fueron invocadas o discutidas en Allende Pérez v. García, supra, constituyen obstáculos insalvables contra la acción en controversia. Nos toca examinar aquí la validez de esta otra base para la impugnación a la acción en cuestión. Es decir, aunque la peticionaria tiene capacidad (legitimación activa) para presentar la acción de discrimen en el empleo en cuestión, debemos decidir si aun así tal acción debe desestimarse por ser improcedente al amparo de las doctrinas aludidas invocadas por los recurridos.

III.

A.    **Desarrollo de la doctrina de "judicial estoppel"**

Las doctrinas de "judicial estoppel" y "equitable estoppel" son doctrinas en equidad desarrolladas por algunos tribunales estatales y federales norteamericanos.  A pesar de que ambas doctrinas persiguen propósitos diferentes y tienen características particulares, en diversas ocasiones han sido confundidas en su aplicación.  Veamos.

La doctrina de "judicial estoppel" impide que una parte asuma una postura en un procedimiento judicial que sea contraria a otra postura previamente adoptada por dicha parte en el mismo procedimiento o en un procedimiento anterior. Ashley S. Deeks, Raising the Cost

of Lying: Rethinking *Erie* for Judicial Estoppel, 64 U. Ch. L. Rev. 873 (1997); Elissa Kirby, Civil Procedure- A Conflict of Interests: Frustrating the Goals of Anti-Discrimination Legislation with the Third Circuit´s Latest Judicial Estoppel Analysis- *McNemar v. Disney Store, Inc*. 91 F.3d 610 (3d Cir. 1996), *cert. denied*., 117 S. Ct. 958 (1997), 70 Temp. L. Rev. 349 (1997); Eric. A Schreiber, The Judiciary Says, You Can´t Have It Both Ways: Judicial Estoppel- A Doctrine Precluding Inconsistent Positions, 30 Loyola L.A.L. Rev. 323 (1996); Rand G. Boyers, Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel, 80 NW. U.L. Rev. 1244 (1986). Es decir, con la doctrina referida se trata de evitar que las partes se beneficien asumiendo posiciones contradictorias en los procedimientos judiciales. Se procura que las partes no puedan "play fast and loose with the court". Scarano v. Central R. Co. of New Jersey, 203 F.2d 510 (3er 1953). Como resultado, si una parte asumió una postura ante un tribunal, ya sea en una demanda, en una deposición o en un testimonio judicial, puede invocarse contra ésta la doctrina de "judicial estoppel" para impedir que dicha parte asuma una posición distinta a la anterior en un procedimiento judicial posterior. La aplicación de esta doctrina tiene el propósito de proteger la integridad de los tribunales y del sistema judicial. De esta forma se trata de salvaguardar la administración de la justicia y la confianza del público en la pureza y eficiencia de los procedimientos judiciales. Boyers, supra.

La doctrina de "judicial estoppel" fue aplicada por primera vez en los tribunales estatales de Tennessee y en 1857 fue adoptada por su Tribunal Supremo en Hamilton v. Zimmerman, 37 Tenn. (5 Sneed) 39 (1857). Desde su adopción, los tribunales de ese estado aplican la doctrina para impedir el uso de cualquier posición posterior contraria a otra anteriormente asumida en un procedimiento judicial excepto cuando la posición anterior resultare de un error, inadvertencia o fraude sufrido por la parte que incurrió en la inconsistencia. Tennessee es el único estado de la Unión norteamericana que aplica esta doctrina de manera absoluta; es decir, siempre que se cumpla con sus requisitos, la doctrina es aplicada independientemente de las consecuencias que ello acarree. Boyers, supra.

Actualmente, son muchos los tribunales estatales y federales norteamericanos que han adoptado la doctrina de "judicial estoppel". En estos, sin embargo, aunque las razones para aplicar la doctrina referida suelen coincidir, su aplicación dista mucho de ser uniforme. Por ejemplo, en algunas jurisdicciones la doctrina es aplicada sólo cuando ello es necesario para evitar que ocurran resultados contradictorios en procedimientos afines. En otras ocasiones se exige que haya identidad de partes en ambos procesos y que la parte que invoca la doctrina haya sido perjudicada por la contradicción previa. Schreiber, supra; Boyers, supra. Otros tribunales aplican esta doctrina sólo cuando un tribunal previamente ha adoptado como cierta la posición antes asumida por la parte contra la cual se invoca dicha doctrina. Deeks, supra; Schreiber, supra; Boyers, supra.

No empece las diferencias que caracterizan la aplicación de la doctrina de "judicial estoppel" en distintas jurisdicciones norteamericanas, prevalece en ellas el requisito de que la contradicción que suscitó su aplicación no puede ser producto de un error, inadvertencia o fraude sufrido por quien asumió la posición contradictoria. Es decir, el que invoca la doctrina tiene que demostrar **siempre** que la posición inconsistente previa **no** fue hecha por error, inadvertencia o como producto de un fraude contra quien incurrió en la inconsistencia. Boyers, supra.

Es menester señalar que varias jurisdicciones norteamericanas se han negado a adoptar la doctrina de "judicial estoppel". Entre ellas se encuentran Louisiana, Carolina del Sur, el Distrito de Colombia y el Décimo Circuito Federal. Deeks, supra; Schreiber, supra.

Más aun, la doctrina de "judicial estoppel" ha sido severamente criticada por especialistas en la materia debido a que su aplicación automática puede redundar en resultados injustos, o porque su uso puede afectar la implantación de importantes políticas públicas. Así pues, se ha censurado la aplicación de la doctrina en casos que tratan con discrimenes patronales. En tal situación, la desestimación de una demanda de un obrero por causa de contradicciones previas suyas tiene el efecto de que un patrono que podría estar incurriendo en conducta discriminatoria ilegal no ha de ser sancionado por tal conducta aun cuando exista la clara política pública de prohibir y castigar tal actuación severamente. Kirby, supra.

**B.    La doctrina del "equitable estoppel"**

La doctrina del "equitable estoppel", que muchas veces se confunde con la de "judicial estoppel", tiene características y propósitos diferentes a ésta. Aunque en ambos casos se trata de impedir que una parte asuma una postura contradictoria con otra adoptada por dicha parte en un procedimiento judicial previo, la doctrina de "equitable estoppel" sólo está dirigida a salvaguardar la integridad de la relación entre las partes involucradas en unos casos. Lo que se pretende es proteger a unos litigantes de los perjuicios que puedan causarle sus adversarios inescrupulosos. Se trata de asegurar una relación equitativa entre las partes. Por ello, para que la doctrina de "equitable estoppel" pueda ser invocada con éxito por un litigante, además de la contradicción en posturas, se requiere: (1) que ambas partes hayan sido adversarias en el procedimiento anterior; (2) que quien invoca la doctrina haya confiado en la posición previamente asumida por su oponente, la cual le causó perjuicio; y (3) que aceptar la posición contradictoria en el nuevo procedimiento sea en detrimento de la parte que invoca la doctrina. Schreiber, supra; Boyers, supra.

**C.    Doctrina de los actos propios**

En nuestra jurisdicción ya hemos adoptado la normativa de equidad conocida como la doctrina de los actos propios. Con ésta se procura salvaguardar unos importantes intereses sociales parecidos a los protegidos por las doctrinas discutidas en los acápites anteriores.

Al adoptar la doctrina de los actos propios señalamos su analogía con la doctrina general de "estoppel" desarrollada en el derecho anglosajón, de la siguiente manera:

> El contenido de la norma de que a nadie es lícito ir contra los propios actos tiene fundamento y raíz en el principio general de Derecho que ordena proceder de buena fe en la vida jurídica. La conducta contradictoria no tiene lugar en el campo del Derecho, y debe ser impedida. Este principio tiene como paralelo en el Derecho inglés la doctrina de *estoppel*. El típico efecto mínimo que debe reconocerse a los actos unilaterales es que dejan fundado un *estoppel*. Este evita que el sujeto al que es imputable el acto unilateral pueda actuar en contradicción con su voluntad declarada.

> Siendo este de "ir contra los propios actos" un principio general de Derecho, de validez univeral, fluye espontáneamente del precepto del Art. 6 del Código Civil instruyendo que en defecto de Ley aplicable al caso, el tribunal resolverá conforme a equidad, que quiere decir que se tendrá en cuenta la razón natural de acuerdo con los principios generales del derecho, y los usos y costumbres aceptados y establecidos. Su eficacia, su fuerza vinculante tienen vida y efecto propios, que van en protección de la confianza depositada en la apariencia, que es por extensión protección de un interés social o la consecución de un ideal de justicia. Los presupuestos necesarios o elementos constitutivos para la aplicación de la norma jurídica de que nadie puede venir contra sus propios actos pueden resumirse así: (a) Una conducta determinada de un sujeto, (b) que haya engendrado una situación contraria a la realidad, esto es, aparente y, mediante tal apariencia, susceptible de influir en la conducta de los demás, y (c) que sea base de la confianza de otra parte que haya procedido de buena fe y que, por ello, haya obrado de una manera que le causaría un perjuicio si su confianza quedara defraudada. <u>Int. General Electric v. Concrete Builders</u>, 104 D.P.R. 871, 877-78 (1976).

## IV.

A modo de exordio, conviene señalar que *de ordinario* no es función de los tribunales incorporar al ordenamiento jurídico propio normas o doctrinas que están vigentes en otras jurisdicciones. Con arreglo al principio constitucional de separación de poderes, la facultad de decretar la ley le corresponde a la rama legislativa, y al poder judicial le compete la función de interpretarla y aplicarla. <u>Alejandro Rivera v. E.L.A.</u>, 140 D.P.R. ___, 96 JTS 50. Sólo cuando existen lagunas o conflictos en la ley es legítima la elaboración jurisprudencial del derecho. <u>Collazo Cartagena v. Hernández Colón</u>, 103 D.P.R. 870 (1975); <u>Flores v. Meyers Bros. of P.R.</u>, 101 D.P.R. 689 (1973); <u>Robles Ostolaza v. U.P.R.</u>, 96 D.P.R. 583 (1968). Y aun en tales situaciones cuando nos compete llenar la laguna legislativa para poder resolver casos concretos, ya se ha advertido la prudencia y precaución que debe regir la adopción en nuestro ordenamiento de doctrinas desarrolladas en el derecho anglosajón que pueden no ser armoniosas con las particularidades de nuestro propio derecho de entronque civilista. <u>Corpak, Art Printing v. Ramallo Brothers</u>, 125 D.P.R. 724, 735 <u>in fine</u> (1990); <u>Dolman v. Hernández Saldaña</u>, 103 D.P.R. 487 (1975).

La adopción de instituciones jurídicas ajenas, pues, más que un asunto de nacionalidad, es una cuestión de **necesidad**. <u>Borges v. Registrador</u>, 91 D.P.R. 112, 120-121 (1964). Debemos hacerlo cuando ello es preciso, si la norma ha adoptarse es, además, racional, justiciera y conveniente. <u>Pueblo v. Batista Maldonado</u>, 100 D.P.R. 936 (1972).

A la luz de esta conocida normativa, debemos examinar entonces si en el caso de autos se dan las circunstancias referidas, de tal modo que nos requiera adoptar ahora en nuestra jurisdicción las doctrinas anglosajonas del "equitable estoppel" y del "judicial estoppel"

identificadas antes. Para ello, conviene considerar si el Tribunal de Circuito de Apelaciones manejó correctamente la aplicación de dichas doctrinas a los hechos del caso de autos. Veamos.

V.

**A.    El "equitable estoppel"**

El foro apelativo estimó que la doctrina del "equitable estoppel" estaba vigente en Puerto Rico, pero concluyó que no procedía que se aplicase al caso de autos debido a que no existía en éste la requerida identidad de partes entre el procedimiento de quiebra y el actual litigio.  Al así hacerlo, señaló:

> [e]l [Banco] no fue acreedor de la demandante en el caso de quiebra, razón por la cual no puede sostenerse que la conducta original de [la demandante] creó un estado de Derecho que le ganó la confianza [del Banco] en la que descansó y actuó para su detrimento.

Razonó el foro apelativo que ello "impide la aplicación de la doctrina de 'equitable estoppel' **según adoptada en esta jurisdicción**."

Si la doctrina referida estuviese vigente en Puerto Rico, coincidiríamos con el tribunal apelativo en que dicha doctrina no podía aplicarse a este caso. No existía aquí el tipo de contradicción que cumpliese con los requisitos de la doctrina del "equitable estoppel" invocada por el Banco, por la ausencia de identidad de partes en ambos procedimientos.

No obstante, debemos aclarar que en nuestra jurisdicción nunca hemos adoptado la doctrina anglosajona del "equitable estoppel", como erróneamente afirmó el foro apelativo.[1] Al referirnos en el pasado a la doctrina más general de "estoppel", sólo ha sido a manera de ilustración y comparación con nuestra propia doctrina de los actos propios. Así lo hicimos en Int. General Electric v. Concrete Builders, supra, donde indicamos que nuestra doctrina de los actos propios tenía "como paralelo en el Derecho inglés la doctrina de *estoppel*". En efecto, el "equitable estoppel" tiene objetivos similares a los de nuestra doctrina de los actos propios. Sin embargo, sus perfiles son diferentes.  Contrario a la doctrina de "equitable estoppel", la doctrina de los actos propios no requiere que la contradicción que suscita su aplicación se haya dado siempre entre un procedimiento judicial previo y uno actual; ni siquiera requiere que la contradicción ocurra en el contexto de un procedimiento judicial. Así, pues, ya antes hemos aplicado la doctrina de los actos propios en ocasiones en que los actos contradictorios ocurrieron fuera de un procedimiento judicial. Veáse, Int. General Electric v. Concrete Builders, supra; Crossroads Dev. Corp. v. E.L.A., 103 D.P.R. 789 (1975). Por ello, nuestra doctrina, aunque incluye las instancias

---

[1] Claramente, ésta no corresponde a ninguna de las doctrinas de equidad que hemos adoptado anteriormente.

comprendidas por la del "equitable estoppel", es más abarcadora que ésta. No es necesario, pues, acudir a esta doctrina del derecho común anglosajón para resolver situaciones que están reguladas ya por nuestra doctrina de

los actos propios, que procede del derecho civil. <u>Dalmau v. Hernández Saldaña</u>, <u>supra</u>. Sobre todo, cuando la doctrina aludida ha dado lugar a una gran confusión.[2]

En resumen, pues, aunque el foro apelativo correctamente resolvió que la doctrina del "equitable estoppel" no podía aplicarse al caso de autos, erró al determinar que dicha doctrina había sido adoptada en nuestra jurisdicción. Nunca la hemos adoptado en la jurisprudencia de Puerto Rico y obviamente nada hay en este caso que justifique variar tal situación.

**B.    El "judicial estoppel"**

1.    En cuanto a la doctrina de "judicial estoppel", el foro apelativo reconoció correctamente que ésta no había sido adoptada antes en nuestra jurisdicción, pero entonces determinó que procedía su incorporación a nuestro ordenamiento jurídico de manera limitada a los casos de quiebra y según lo resuelto en <u>Ryan Operations G.P. v. Santiam-Midwest Lumber Co.</u>, 81 F.3d 355 (3er Cir. 1996).

Según adoptada en <u>Ryan Operations G.P. v. Santiam-Midwest Lumber Co.</u>, <u>supra</u>, la doctrina de "judicial estoppel" aplica: (1) si la postura de una parte en un procedimiento de quiebra es inconsistente con su postura en un procedimiento judicial posterior, y (2) si las referidas posiciones inconsistentes son producto de la mala fe o de un intento de "play fast and loose with the court". En <u>Ryan Operations G.P. v. Santiam-Midwest Lumber Co.</u>, <u>supra</u>, se señaló que dicha doctrina de "judicial estoppel" se aplica cuando es invocada por un tercero que no fue parte en el procedimiento de quiebra, y se aclaró que omitir la causa de acción en el inventario de activos de la Corte de Quiebras, por sí sólo, no activa la doctrina de "judical estoppel".  En ese sentido se resolvió que la doctrina no aplica si la posición anterior de una parte fue producto de un error de buena fe más que de un esquema para engañar al tribunal.

En el caso de autos, el foro apelativo determinó que se había satisfecho el primer requisito para aplicar aquí la doctrina de "judicial estoppel", ya que la peticionaria "estaba en la obligación de informar su causa de acción contra [el Banco] en su inventario de activos sometido ante la Corte de Quiebras...". Según dicho foro, el hecho de que la peticionaria pretendiera reclamar su causa de acción en el foro estatal, sin haberla informado a la Corte de Quiebras, constituía "una conducta inconsistente al intentar ejercer posteriormente ese mismo reclamo [antes] que omitió."

---

[2] En efecto, los comentaristas señalan que, en un gran número de casos, la doctrina ha generado una gran confusión. Schreiber, <u>supra</u>; Boyers, <u>supra</u>.

Sobre el segundo requisito, de que existiese mala fe de parte de la demandante, el foro apelativo concluyó que el hecho de que la peticionaria omitió informar a la Corte de Quiebras la reclamación de daños y perjuicios que presentó en el foro estatal **"crea una fuerte inferencia en su contra que ni tan siquiera ha intentado derrotar afirmando con hechos, como es su obligación, que su actuación obedeció al desconocimiento o falta de culpa de su parte."** (Enfasis nuestro. Citas omitidas.) Según el foro apelativo, tal omisión de la peticionaria privó a ese tribunal "de advertir no sólo que la omisión apuntada fue debido a un descuido, negligencia u olvido sin culpa de su parte, sino que existe una genuina controversia de hechos que dilucidar al respecto."

Esta parte del dictamen del foro apelativo es contraria a lo resuelto expresamente en Ryan Operations G.P. v. Santiam-Midwest Lumber Co., supra, relativo al alcance de la doctrina de "judicial estoppel". Se advirtió allí que:

> We are persuaded, however, that policy considerations militate against adopting a rule that the requisite intent for judicial estoppel **can be inferred from the mere fact of nondisclosure in a bankruptcy proceeding.** Such a rule would unduly expand the reach of judicial estoppel in post-bankruptcy proceedings and would inevitably result in the preclusion of viable claims on the basis of inadverted or goodfaith inconsistencies." Id., pág. 364. (Enfasis suplido. Citas omitidas.)

Por lo tanto, en Ryan Operations G.P. v. Santiam-Midwest Lumber Co., supra, **explícitamente** se rechazó aplicar la doctrina de "judicial estoppel" a base de una inferencia sobre la requerida intención de defraudar al tribunal. El foro apelativo, aunque amparó su dictamen en lo resuelto en Ryan Operations G.P. v. Santiam-Midwest Lumber Co., supra, hizo lo contrario a lo que se determinó en dicho caso. Concluyó que había habido una conducta de mala fe o fraudulenta de parte de la peticionaria sólo debido a que omitió informar a la Corte de Quiebras la acción de daños y perjuicios presentada en el foro estatal. Es decir, a base de una mera inferencia. Al así actuar, el foro apelativo ignoró precisamente las razones de gran peso invocadas en Ryan Operations G.P. v. Santiam-Midwest Lumber Co., supra, para negarse a aplicar la doctrina referida apoyada en meras inferencias. Al respecto indicó el Tercer Circuito federal:

> We nonetheless state briefly our belief that judicial estoppel is an "extraordinary remed[y] to be invoked when a party´s inconsistent behavior will otherwise result in a miscarriage of justice." It is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims, especially when the alleged inconsistency is insignificant at best and there is no evidence of intent to manipulate or mislead the courts. Judicial estoppel is not a sword to be wielded by adversaries unless such tactics are necessary to "secure substantial equity." Id., pág. 365.

Erró, pues, el foro apelativo al resolver como lo hizo fundándose en una mera inferencia, que era improcedente precisamente a la luz de Ryan Operations G.P. v. Santiam-Midwest Lumber Co., supra. Además, tal dictamen del foro apelativo contraviene las normas referentes a la buena fe y el fraude existentes en nuestro propio ordenamiento, que han sido ampliamente reiteradas por este Tribunal. En cuanto a la buena fe, es harto conocida la norma de que en nuestra jurisdicción **la buena fe se presume por lo que, quien reclama la mala fe, debe probarla.** Jiménez v. Reyes, res. 16 de septiembre de 1998, 146 D.P.R. ___,

98 JSPR 123, 98 JTS 124; B.W.A.C. Int`l. v. Quasar Co., 138 D.P.R. 60 (1995); Cervecería Corona v. Commonwealth Ins. Co., 115 D.P.R. 345 (1984). También es de hondo arraigo en nuestro ordenamiento la norma de que **el fraude no se presume.** Pardo v. Sucn. Stella, res. 17 de junio de 1998, 145 D.P.R. ___, 98 TSPR 77, 98 JTS 80; Carrasquillo v. Lippit & Simonpietri, Inc., 98 D.P.R. 659 (1970); Feliciano v. P. Cedeño, S. en C., 78 D.P.R. 39 (1955). Ambas normas fueron ignoradas por el Tribunal de Circuito de Apelaciones en este caso. Aquí el Banco alegó la existencia de mala fe o conducta fraudulenta de parte de la peticionaria al omitir informar a la Corte de Quiebras la presentación de la acción de daños y perjuicios instada en el foro de instancia. Para probar tal alegación, el Banco se limitó a afirmar que tal omisión de la peticionaria constituyó mala fe o fraude. Es decir, el Banco no intentó probar la mala fe o conducta fraudulenta de la peticionaria, sino que meramente alegó que de su omisión debía inferirse la mala fe o la conducta fraudulenta. El foro apelativo erróneamente acogió el planteamiento del Banco.

Dicho foro cometió aun otro error sobre el particular. No procedía que se resolviese la presente controversia mediante la vía sumaria. Es doctrina reiterada que el propósito principal de la moción de sentencia sumaria es propiciar la resolución justa, rápida y económica de litigios que no presentan controversias genuinas de hechos materiales por lo que no ameritan la celebración de juicio en su fondo, conforme lo dispone la Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Fernández & Gutiérrez v. Mun. San Juan, res. el 19 de marzo de 1999, 147 D.P.R. ___, 99 TSPR 26, 99 JTS 31; Hurtado v. Osuna, 138 D.P.R. 793 (1995); Hurtado v. Osuna, 138 D.P.R. 801 (1995); Tello, Rivera v. Eastern Airlines, 119 D.P.R. 83 (1987). De igual forma, hemos señalado que la parte que solicita la sentencia sumaria en un pleito viene obligada a demostrar, fuera de toda duda, la inexistencia de una controversia real sobre todo hecho pertinente que a la luz del derecho sustantivo aplicable determinaría una sentencia a su favor como cuestión de ley. Rivera et al. v. Superior Pkg., Inc. et al., 132 D.P.R. 115 (1992); Tello, Rivera v. Eastern Airlines, supra; Roth v. Lugo, 87 D.P.R. (1963). Al respecto, hemos señalado que hay litigios y controversias que por su naturaleza no deben ser resueltos mediante sentencia sumaria, como por ejemplo, aquellos en los que están involucrados elementos subjetivos y de intención y propósitos mentales en los cuales el factor de credibilidad es importante y se depende de lo que se extraiga de un juicio vivo para llegar a la verdad. Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272 (1990); García López v. Méndez García, 88 D.P.R. 363 (1963).

En el caso de autos, no sólo estaban involucrados elementos de intención, sino que también la doctrina bajo la cual se solicitó la concesión de la sentencia sumaria requiere que se pruebe la comisión de fraude o conducta fraudulenta de la parte contra la que se invoca. Como bien señaló la Jueza Alfonso de Cumpiano en su voto disidente:

> [a]ún cuando no surja controversia de hechos en cuanto a la omisión de la [peticionaria] en informar en el caso de quiebras [la acción ante nos], ello no es suficiente para establecer fraude o intención de defraudar al sistema judicial.... La aplicación de la doctrina de "judicial estoppel", según

adoptada por [el foro apelativo] presupone la dilucidación de hechos, entre otros, en cuanto a propósitos, intención, error, inadvertencia.

No podía dilucidarse la controversia aludida de modo sumario.

2.    Las dificultades señaladas antes, relativas al dudoso manejo por el Tribunal de Circuito de Apelaciones de la doctrina del "judicial estoppel", junto con las que surgen de la diversidad de posturas y versiones que caracterizan a esa doctrina en sus jurisdicciones de origen, a las que aludimos antes, aconsejan en contra de incorporarla a nuestro ordenamiento jurídico, sobre todo en vista de que la doctrina de actos propios del derecho patrio en muchas instancias cumple con sencillez el cometido de la del "judicial estoppel".

Más aun, no encaramos aquí la situación de una laguna legislativa. El planteamiento del Banco instando la adopción de la doctrina del "judicial estoppel" no surge porque no exista en Puerto Rico una ley aplicable para resolver este caso. Más bien, el planteamiento se hace porque esa doctrina según alegada le provee una conveniente defensa al Banco contra la imputación de trato discriminatorio patronal que le hace la demandante. Como la adopción de la doctrina referida no es necesaria o indispensable para llenar una laguna de la ley, ésta no procede.

Finalmente, también debe señalarse que la adopción aquí de la doctrina de "judicial estoppel" como la propone el Banco tendría en este caso un efecto adverso a la implantación de la preeminente política pública de Puerto Rico de proteger a los trabajadores del país contra actos discriminatorios de sus patronos. Se convertiría en un obstáculo importado que podría impedir que se cumpla con el mandato legislativo que prohibe el discrimen en el empleo. Este efecto deletéreo frente a una importante política pública nuestra también milita en contra de la adopción de la doctrina referida según propuesta aquí.

Por todo lo anterior, erraron los foros de instancia y apelativo al invocar y amparar sus respectivos dictámenes en este caso sobre el fundamento de la doctrina anglosajona del "judicial estoppel".

VI.

Por los fundamentos antes expuestos, procede que se dicte sentencia para revocar la dictada por el Tribunal de Circuito de Apelaciones y por el tribunal de instancia, para ordenar la reinstalación de las reclamaciones de daños y perjuicios desestimadas, y para devolver el caso al Tribunal de Primera Instancia para la continuación de los procedimientos, conforme a lo aquí resuelto.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carmen Lilliam Corraliza
Rodríguez

    Demandante-peticionaria

        vs.               CC-1999-384        CERTIORARI

Banco de Desarrollo
Económico de Puerto Rico

    Demandados-recurridos

OPINIÓN CONCURRENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 9 de enero de 2001

No obstante estar conforme con el resultado al que se llega en la Sentencia emitida por este Tribunal en el caso de autos, consideramos apropiado expresarnos por separado con el propósito de aclarar la distinción que hacen dos Jueces de este Tribunal entre el caso de autos y el caso de Allende v. García, res. el 26 de abril de 2000, 2000 TSPR 66.[3]

I

Hace varios meses, en el mencionado caso de Allende v. García, ante, resolvimos, en síntesis y en lo pertinente que: en un procedimiento de

---

[3] Opinión de conformidad del Juez Asociado señor Fuster Berlingeri, a la cual se une la Juez Asociada señora Naveira de Rodón.

quiebra, <u>bajo el</u> <u>Capítulo 7</u>, una causa de acción por despido ilegal surgida <u>con anterioridad</u> al procedimiento de quiebra, es "propiedad del caudal" ("property of the estate"); y que a pesar de no haberse incluido en el inventario, el síndico es el único con capacidad para representar el caudal en dicha reclamación. Sin embargo, como en dicho caso no se podía determinar si la causa de acción por discrimen había surgido antes, o después, de Allende haberse acogido al procedimiento de quiebra, devolvimos el caso al tribunal de instancia para que hiciera tal determinación.

En la Opinión de conformidad del Juez Asociado señor Fuster Berlingeri se expresa que, a diferencia de <u>Allende</u> v. <u>García</u>, ante, la causa de acción de Carmen Lilliam Corraliza surgió luego de comenzado el procedimiento de quiebra, y que, por lo tanto, ésta tenía capacidad para presentar dicha acción. <u>Sin embargo, en la misma no se expresa nada sobre la diferencia que existe en cuanto a los procedimientos de quiebra</u>. Debe mantenerse presente que en el caso de autos el procedimiento de quiebra se tramitó bajo el <u>Capítulo 13</u>, mientras que en <u>Allende</u> v. <u>García</u>, ante, fue bajo el Capítulo 7. <u>Siendo procedimientos distintos, entendemos necesario discutir, aun cuando brevemente, la diferencia entre ambos capítulos para así evitar futuras confusiones</u>.

II

Al iniciarse un procedimiento de quiebra, bajo los Capítulos 7 ó 13 del Código de Quiebras, se crea inmediatamente un caudal en quiebra ("bankruptcy estate"). 11 U.S.C. sec. 541. Para poder determinar los bienes que componen dicho caudal, se le impone la obligación al deudor --<u>en ambos casos</u>-- de acompañar su petición de quiebra con un estado financiero e inventario ("schedule") de todos sus activos y pasivos. 11 U.S.C. sec. 521. En dicho inventario, el deudor debe incluir todo interés propietario, legal o equitativo, que le pertenezca al comienzo del procedimiento de quiebras. 11 U.S.C. sec. 541 (a)(1).

Si bien es cierto que el Código de Quiebras contiene disposiciones generales aplicables a ambos capítulos, no es menos correcto que dicho Código regula, de forma específica, ciertos aspectos de cada uno de ellos. En este sentido, bajo el Capítulo 7 se crean dos caudales: un caudal de quiebra compuesto por las propiedades pertenecientes al deudor al comienzo del procedimiento y un nuevo caudal compuesto por las propiedades adquiridas luego de la solicitud de quiebra. Debido a ello, como regla general, formará parte del caudal en quiebra <u>únicamente</u> las propiedades pertenecientes al deudor <u>al comienzo del procedimiento de quiebras</u>, reteniendo éste posesión de las propiedades adquiridas luego de comenzado el procedimiento de quiebras. <u>Brassfield</u> v. <u>Mc Lendon</u>, 953 F. Supp. 1424 (M.D. Ala 1996).

Respecto a las funciones del síndico, bajo el Capítulo 7, <u>el Código de Quiebras establece que éste deberá recolectar y reducir a dinero todo el caudal en quiebra</u>. 11 U.S.C. sec. 704(1). Dicha encomienda obliga al síndico a tomar control de las causas de acción

del deudor que forman parte del caudal. The Travelers Indemnity Company v. Griner, 240 B.R. 432.

Por lo tanto, en los casos bajo el Capítulo 7, una vez se determina que la causa de acción pertenece al caudal, el síndico como representante del caudal, tiene capacidad exclusiva para entablar la acción en interés del caudal. Véase: Matter of Heath, 115 F. 3d 521 (7th Cir. 1997); Detrick v. Panalpina, Inc., 108 F. 3d 529, 535 (4th Cir. 1997). Es por ello que, en el caso de Allende, resultaba necesario y pertinente definir el momento en que surgió la causa de acción, pues era determinante para decidir si el demandante tenía o no capacidad ("standing") para presentar dicha acción.

En el caso que hoy ocupa nuestra atención, sin embargo, la Sra. Corraliza Rodríguez tramitó el procedimiento de quiebras bajo el Capítulo 13. A diferencia del Capítulo 7, cuyo propósito es reducir a dinero todo el caudal en quiebra, el Capítulo 13 permite al deudor reorganizar sus finanzas sin tener que disponer de sus bienes. Como parte del proceso establecido por el Capítulo 13, el deudor deberá proponer un plan para satisfacer todas o casi todas sus deudas mediante pagos regulares al síndico ("trustee"). El síndico entonces deberá pagar a los acreedores, de acuerdo al plan establecido.

Por las particularidades del Capítulo 13, el Código de Quiebras incluye como parte del caudal en quiebra tanto lo perteneciente al deudor al comienzo del procedimiento de quiebras, como las propiedades (identificadas en la sección 541) adquiridas por éste durante el procedimiento de quiebras. 11 U.S.C. sec. 1306.[4] Bajo el Capítulo 13 el deudor retiene posesión de sus activos, incluyendo las causas de acción, a pesar de éstos pertenecer al caudal en quiebra. 11 U.S.C. sec. 1306(b).

Es decir, a diferencia del Capítulo 7, bajo el cual el síndico adquiere la capacidad exclusiva para representar los bienes del caudal en quiebra, bajo el Capítulo 13 se le ha reconocido capacidad al deudor para entablar las causas de acción pertenecientes al caudal en quiebra. Collier on Bankruptcy, sec. 1306.03; Olick v. Parker & Parsley, 145 F.3d 513 (2d Cir. 1998).

En atención a los fundamentos antes expresados, es que concurrimos con el resultado al que se llega en la Sentencia emitida por el Tribunal en el presente caso.

---

[4] "1306. Property of the estate

(a) Property of the estate includes, in addition to the property specified in section 541 of this title—
(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first . . ."

FRANCISCO REBOLLO LÓPEZ
Juez Asociado