# 2007 DTA 70

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL I**

RAÚL CÁMARA MORALES, POR SÍ; IDALIA FUERTES SÁNCHEZ, POR SÍ, Y AMBOS EN REPRESENTACIÓN DE LA SOCIEDAD LEGAL DE GANANCIALES ENTRE ELLOS CONSTITUIDA
Demandantes-Apelados

v.

COCO RICO, INC.
Demandado-Apelante

Núm. KLAN-2006-01238

San Juan, Puerto Rico, a 15 de mayo de 2007

Panel integrado por su Presidenta, la Juez Rodríguez de Oronoz, y los Jueces Ramírez Nazario y Piñero González

Piñero González, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Coco Rico, Inc. (en adelante, Coco Rico) comparece ante nos mediante recurso de apelación, solicitando la revocación de la sentencia dictada por el Tribunal de Primera Instancia (en adelante, TPI) el 1 de abril de 2005, copia de la cual fue archivada en autos el 29 de agosto de 2006.

En la referida sentencia, el TPI declaró con lugar la querella presentada por Raúl Cámara Morales, Idalia Fuertes Sánchez y la Sociedad Legal de Gananciales compuesta por ambos (en adelante, los apelados), en la cual éstos reclamaron el cumplimiento específico de la compensación por retiro acordada entre las partes. Como consecuencia, condenó a Coco Rico al pago de la compensación por retiro, intereses, daños económicos, y sufrimientos y angustias mentales. Además, le impuso el pago de $60,000.00 por concepto de honorarios de abogado.

Por los fundamentos que expondremos a continuación, confirmamos parcialmente la sentencia recurrida en cuanto a la procedencia de la reclamación sobre el pago de la compensación por retiro en beneficio del apelado, señor Raúl Cámara Morales, los intereses por mora acumulados y sobre la concesión de honorarios de abogado por temeridad. Por otra parte, modificamos dicha sentencia en lo referente a la cuantía de la compensación por angustias mentales concedida a la co-apelada Idalia Fuertes Sánchez y revocamos los otros extremos de la sentencia recurrida.

I

El 21 de enero de 1999, los apelados presentaron una querella ante el TPI. Alegan que luego de haber acordado una compensación por retiro, Coco Rico detuvo injustificadamente los pagos pactados en virtud del referido acuerdo, reclamando el cumplimiento específico de la obligación.

En su sentencia, el TPI condenó a Coco Rico al pago de $300,000.00 en concepto de compensación por retiro dejado de satisfacer por el período comprendido entre el 24 de noviembre de 1998 al 28 de febrero de 2005, más los intereses por mora acumulados, $4,000.00 mensuales por el resto de la vida del señor Cámara, $100,000.00 en daños y perjuicios a favor de la Sociedad Legal de Gananciales compuesta por el señor Cámara y su esposa, $100,000.00 en daños y perjuicios a la esposa del señor Cámara y $100,000.00 por el mismo concepto al señor Cámara. Además, impuso el pago del interés legal sobre las cantidades concedidas, las costas del litigio y $60,000.00 en concepto de honorarios de abogado por la temeridad de Coco Rico.

El 28 de abril de 2005, Coco Rico sometió una "Moción de relevo de sentencia", en la cual le informó al foro sentenciador que la notificación de la sentencia, enviada el 7 de abril 2005 fue remitida a una dirección incorrecta. A causa de la notificación defectuosa, solicitó el relevo de la sentencia.

Previo a que el TPI se expresara en torno a la referida moción, el 6 de mayo de 2005, Coco Rico acudió ante este Foro mediante recurso de apelación, solicitando se revocara la sentencia aquí recurrida. Alegó que ésta fue notificada inadecuadamente porque fue enviada por la Secretaría del TPI a una dirección equivocada. En esa ocasión, este Tribunal determinó que el recurso de apelación fue presentado prematuramente, ya que no se había notificado la sentencia conforme a derecho, por lo cual desestimó la apelación por falta de jurisdicción. Luego de varios trámites procesales, la sentencia fue debidamente notificada el 29 de agosto de 2006.

El 28 de septiembre de 2006, Coco Rico presentó nuevamente el recurso de apelación que nos ocupa. En ésta ocasión alega que erró el TPI al determinar que: 1) había un acuerdo o contrato válido en derecho para una compensación por retiro; 2) se habían dado los requisitos legales para un plan de retiro o una compensación por retiro, susceptible de ser reclamado mediante la presente acción civil; y 3) las cuantías fijadas resultan excesivas y punitivas.

El 11 de octubre de 2006, los apelados presentaron moción en auxilio de jurisdicción, solicitaron que Coco Rico prestara una fianza por la cantidad de $1,000,000.00 a través de una compañía aseguradora para satisfacer la sentencia en este caso. De no hacerlo así, que desestimáramos la apelación presentada por ésta. En apoyo a su solicitud, citó el alegado incumplimiento de Coco Rico con lo ordenado por el TPI. En la misma fecha, los apelados presentaron su alegato en oposición. El 11 de octubre de 2006, declaramos no ha lugar la moción en auxilio de jurisdicción, entre otros pronunciamientos.

El 30 de octubre de 2006, le requerimos a Coco Rico el obtener la regrabación de los procedimientos ante el TPI para la preparación de la transcripción de la evidencia.

El 3 de noviembre de 2006, los apelados solicitaron que dejáramos sin efecto tal requerimiento y desestimáramos el presente recurso, arguyendo que la regrabación es un derecho rogado que nunca fue solicitado por Coco Rico. Mediante resolución de 22 de enero de 2007, denegamos la solicitud de los apelados y ordenamos a Coco Rico a cumplir con lo ordenado el 30 de octubre de 2006.

El 1 de febrero de 2007, los apelados solicitaron nuevamente la desestimación del recurso de apelación ante la inacción de Coco Rico. El 15 de febrero de 2007, emitimos resolución a los efectos de declarar sin lugar la solicitud de desestimación e informándole a Coco Rico que como resultado de su incumplimiento con la orden de 30 de octubre de 2006, procederíamos a atender los errores planteados que fueron específicamente abordados y argumentados en el recurso de apelación.

El 30 de marzo de 2007, aunque Coco Rico incumplió nuestras órdenes al no presentar la transcripción de los incidentes acaecidos en el TPI, ordenamos a la Coordinadora del Sistema *For the Record* del TPI que nos sometiera un disco compacto con la regrabación de la vista en su fondo celebradas los días 13 y 14 de enero de 2005. Asimismo, a causa de dicho incumplimiento, le impusimos al Lcdo. Pedro J. Quiñones, abogado de Coco Rico, una sanción económica de $200.00 a ser pagada dentro de diez días desde la notificación de la resolución, pago que no ha sido debidamente satisfecho. La regrabación fue remitida ante nuestra consideración el 13 de abril de 2007.

Así, con el beneficio de los planteamientos de las partes, de la regrabación de la vista en su fondo y conforme a la normativa jurídica que exponemos a continuación, estamos en posición de resolver.

## II

### A

En su primer planteamiento de error, Coco Rico arguye que el alegado contrato o acuerdo que motiva la presente controversia es nulo e ineficaz por ser contrario a lo dispuesto en el Artículo 4.05 de la Ley de Corporaciones de 1995, 14 L.P.R.A. sec. 2725. Fundamenta lo anterior en que éste no fue presentado, autorizado ni ratificado por la Junta de Directores de la corporación o sus accionistas.

De entrada, es menester destacar que a pesar de que tal argumento fue planteado ante el foro de instancia, es forzoso concluir que no fue sustentado mediante prueba a tal efecto. En particular, Coco Rico no ha demostrado qué miembros, si alguno, fueron excluidos del proceso de aprobación de la compensación por retiro. Por el contrario, la prueba presentada demostró que la Junta de Directores estaba integrada casi en su totalidad por los oficiales de la Corporación, los cuales endosaron el pago de compensación por retiro. De hecho, los miembros de la Junta de Directores, el propio señor Carlos Fuertes, Presidente de Coco Rico, y el Contralor y Tesorero de la corporación, señor Roberto Maldonado, consintieron al mismo mediante sus actos.

Un estudio del expediente ante nuestra consideración, revela que el señor Cámara, como Vicepresidente Ejecutivo y Secretario de la Junta de Directores de Coco Rico, le informó al señor Fuertes y al señor Maldonado, sobre su interés en obtener un pago vitalicio de retiro a los fines de retirarse al cumplir los 62 años de edad. A esos efectos, el señor Cámara presentó al señor Fuertes un documento en donde expresaba los términos y condiciones bajos los cuales podría hacer realidad su retiro, una vez cumpliera la edad antes reseñada. La propuesta del señor Cámara sobre dicho extremo fue aprobada por el señor Fuertes y puesta en vigor por el señor Maldonado. Transcurrido poco más de un año desde el inicio de los pagos en concepto de compensación por retiro, el señor Fuertes inició conversaciones para la venta de Coco Rico.

A raíz de las negociaciones para dicha venta, desde el 24 de noviembre de 1998, se suspendió totalmente el pago por retiro del señor Cámara, aduciendo que Coco Rico atravesaba una situación financiera difícil. A pesar de varios intentos para llegar a un acuerdo sobre la liquidación de la compensación por retiro, ello nunca se materializó porque el señor Cámara y el señor Fuertes no lograron acordar una suma aceptable para ambos.

De lo anterior se desprende que los señores Cámara, Fuertes y Maldonado, miembros de la Junta de Directores de Coco Rico, participaron activamente en las negociaciones que culminaron en la aprobación de la compensación por retiro. Es preciso destacar que éste fue aprobado por el mismo señor Fuertes y subsiguientemente por el señor Maldonado, quien llevó a cabo las gestiones para el inicio de los pagos mensuales e instrumentó dicho acuerdo siendo uno de los firmantes de los cheques pagados al señor Cámara en concepto de la compensación por retiro.

En nuestro ordenamiento, los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarias a las leyes, a la moral, ni al orden público. Artículo 1207 del Código Civil, 31 L.P.R.A. sec. 3372. El contrato existe desde que una o varias personas consienten en obligarse respecto de otro u otras, a dar alguna cosa, o prestar algún servicio. Artículo 1206 del Código Civil, 31 L.P.R.A. §3371.

Para que un contrato se configure y sea obligatorio, es necesario que concurran los siguientes requisitos: (a) el consentimiento de los contratantes; (b) un objeto cierto que sea materia del contrato, y (c) una causa de la obligación que se establezca. Artículo 1213 del Código Civil, 31 L.P.R.A. sec. 3391. Los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que sean conformes a la buena fe, al uso y a la ley. Artículo 1210 del Código Civil, 31 L.P.R.A. sec. 3375. Tal es la situación del caso de autos.

Adviértase que aun si el foro recurrido hubiese concluido que no se había configurado una obligación bilateral entre Coco Rico y el señor Cámara, conforme a los hechos probados, la referida obligación jurídica de Coco Rico de satisfacer al señor Cámara el pago en compensación por retiro, surge también al amparo de la doctrina de que a nadie le es permisible ir contra sus propios actos. *Ortiz v. P.R. Telephone*, 162 D.P.R. ___ (2004), **2004 JTS 139**; *Corraliza v. Banco Desarrollo Económico*, 153 D.P.R. 161 (2001); *Int. General Electric v. Concrete Builders*, 104 D.P.R. 871 (1976); *Lausell v. Díaz*, 103 D.P.R. 538 (1975). La doctrina de los actos propios presupone la existencia de los siguientes elementos: (a) una conducta determinada de un sujeto, (b) que haya generado una situación susceptible de influir en la conducta de los demás; y (c) que sea base de la confianza de otra parte que haya procedido de buena fe y que haya obrado de una manera que le causaría un perjuicio si su confianza quedara defraudada. *Int. General Electric v. Concrete Builders, supra.*

En el presente caso, es innegable que el señor Fuertes y el señor Maldonado avalaron en representación de Coco Rico los pagos por concepto de compensación por retiro al señor Cámara. Prueba robusta de tal determinación son los pagos efectuados por éstos, en representación de Coco Rico, por tal concepto al señor Cámara desde su retiro hasta el 24 de noviembre de 1998. Es obvio que Coco Rico perfeccionó un acuerdo válido con el señor Cámara. Además, le está vedado ir contra sus propios actos para evadir la responsabilidad que asumió libre y voluntariamente con respecto al señor Cámara.

Téngase en cuenta que nuestro Tribunal Supremo ha destacado que proceder en contra de los actos propios es análogo al incumplimiento de una obligación que surge de la manifestación unilateral de voluntad, ya que en ambos casos la persona que creyó en la declaración deposita su confianza en ella y actúa de conformidad a lo expresado. *Ortiz v. P.R. Telephone, supra*; *Int. General Electric v. Concrete Builders, supra.* Por lo cual, concluimos que no se cometió el referido error.

## B

Al discutir su segundo señalamiento de error, Coco Rico arguye que el plan de retiro o compensación por retiro estaba sujeto a las disposiciones del Código de Rentas Internas de Puerto Rico de 1994, 13 L.P.R.A. sec. 8001 *et. seq.*, así como el *Employee Retirement Income Security Act of 1974*, 29 U.S.C. sec. 1001, comúnmente conocido como ERISA. En apoyo a tal argumento, sostiene que los planes de retiro "*son determinados*" bajo el Código de Rentas Internas de 1994 y no se cumplió con las secciones 1165 y 1169 de dicho estatuto. En la alternativa, alega que cualquier reclamo sobre un plan de retiro y los beneficios emanantes de éste sólo podían ser planteados en la esfera federal. Conforme a los hechos particulares del presente caso, es errado su razonamiento.

La compensación por retiro objeto del presente recurso es en realidad un acuerdo privado entre el señor Cámara y Coco Rico, ya que no se basó en aportaciones previas del señor Cámara por concepto de beneficios por retiro o un programa de retiro aplicable a todos los empleados de la compañía. Si bien es cierto que a través del Código de Rentas Internas de 1994 se determina la tributación sobre los ingresos y otras partidas, ello no implica que regule el contenido y naturaleza de los planes de retiro. Su aplicación recae exclusivamente sobre las contribuciones a ser pagadas sobre las sumas recibidas por el individuo. No tiene efecto alguno sobre los acuerdos suscritos entre las partes en lo relativo a los pagos mensuales, la cantidad de dichos pagos o cualquier otro elemento del plan de retiro.

Del mismo modo, las disposiciones de ERISA no son de aplicación al caso de autos. El propósito de la referida legislación es "*the protection of employees' and employers' interests and rights with regard to employee benefits administration.*" *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 107 S. Ct. 2211 (1987); *Rodowicz v. Massachusetts Mut. Life Ins. Co.*, 192 F.3d 162, 170 (1st Cir. 1999); *Belanger v. Wyman-Gordon Co.*, 71 F.3d 451, 454 (1st Cir. 1995); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137-38, 142, 111 S. Ct. 478, (1990); *O'Connor v. Commonwealth Gas Co.*, 251 F.3d 262 (1st Cir. 2001). Se ha determinado que existe un plan regido por ERISA cuando su implementación en el ámbito administrativo puede estar sujeta a abusos de parte del patrono porque el empleado no participa en dicho proceso. *New England Mut. Life Ins. Co. v. Baig,* 166 F.3d 1 (1st Cir. 1999). Por lo cual, ERISA sólo es de aplicación a aquellos planes de beneficios que han sido establecidos previamente y en el ámbito administrativo, en una empresa. *O'Connor v. Commonwealth Gas Co., supra.*

El Tribunal de Circuito de Apelaciones para el Primer Circuito Federal ha destacado reiteradamente que un "*one-shot, take-it-or-leave-it incentive*", o un "*voluntary severance package*", o pago global por concepto de retiro voluntario, no están cubiertos por ERISA. *O'Connor v. Commonwealth Gas Co., supra*; Véase además, *Ballesteros v. Bangor Hydro-Electric Co.*, 463 F. Supp. 2d 97 (2006). Tal es la situación en el presente caso, ya que la compensación por retiro acordada entre el señor Cámara y Coco Rico no deriva de un esquema administrativo de la corporación, ni surgía de aportaciones efectuadas anteriormente por éste. Más bien se trató de un pacto voluntario entre las partes que excluye la aplicación de ERISA por las razones antes expuestas. Además, según bien destacan los apelados, el señor Cámara nunca hizo su reclamación al amparo de ERISA ni presentó alegación alguna al respecto ante el foro recurrido. Así, pues, forzoso es concluir que no se cometió el error señalado.

## C

Por último, Coco Rico alega que las cuantías concedidas en concepto de daños y perjuicios resultan excesivas y no concuerdan con la prueba, por lo que sostiene que son claramente de orden punitivo. A tales efectos, alega que aunque optó por no presentar prueba alguna controvirtió los hechos del caso mediante un contrainterrogatorio, así como la prueba estipulada. Es acertado dicho planteamiento.

El Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141, dispone que:

"*[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la*

*reducción de la indemnización."*

Para que proceda la imposición de responsabilidad bajo dicho precepto, es necesario que concurran tres requisitos: (1) la existencia de un daño real, (2) una acción u omisión culposa o negligente; y (3) que exista una relación causal entre el daño y la conducta culposa o negligente. *García v. E.L.A.,* 163 D.P.R. (2005), **2005 J.T.S. 18**; *Vélez v. Amaro,* 138 D.P.R. 182 (1995). La parte demandante debe demostrar los elementos antes enunciados para que prospere su acción.

En nuestro ordenamiento no existe un sistema que permita a los tribunales fijar, de forma exacta y matemática, la valoración de un daño. *Rodríguez Cancel v. A.E.E.,* 116 D.P.R. 443 (1985). Debido a que todos los casos son distintos y tienen sus particularidades, la decisión que se emita en un caso específico sobre la valoración y estimación de daños, descansa en la sana discreción del juzgador y no constituye precedente obligatorio para otro caso. *Toro Aponte v. E.L.A.,* 142 D.P.R. 464 (1997). Las cuantías deben establecerse dentro de unos límites razonables y sobre la base de la prueba presentada en el caso en cuestión, para evitar que la compensación deje de ser un resarcimiento y se convierta en punitiva. *Rivera v. Tiendas Pitusa,* 148 D.P.R. 695 (1999); *S.L.G. v. F. W. Woolworth,* 143 D.P.R. 76 (1997); *Riley v. Rodríguez de Pacheco,* 119 D.P.R. 762 (1987). Es bien sabido que en nuestra jurisdicción no proceden los daños punitivos en una acción de daños y perjuicios. *Carrasquillo v. Lippitt,* 98 D.P.R. 659 (1970).

A pesar de que los apelados nos han solicitado en dos ocasiones la desestimación del presente recurso a raíz del incumplimiento de Coco Rico con nuestras órdenes, solicitamos -como ya hemos reseñado-, la regrabación de la vista en su fondo en aras de evaluar la procedencia de su tercer señalamiento de error. Cabe destacar que aun cuando en la demanda no se reclamaron daños y perjuicios, la misma quedó enmendada mediante la limitada prueba presentada sobre dicho renglón que no fue objetada.

Luego de examinar detenidamente la regrabación de los procedimientos, somos del criterio que no hay base en el récord sobre los daños alegadamente ocasionados a la Sociedad Legal de Gananciales compuesta por los apelados. Conforme a la normativa jurídica antes expuesta, es inaceptable la fijación de daños por tal concepto cuando los mismos no quedaron probados y no se presentó prueba alguna al respecto, salvo meras conjeturas, y declaraciones genéricas y estereotipadas. Consecuentemente, la cuantía de $100,000.00 concedida a la Sociedad Legal de Gananciales es improcedente.

En cuanto a la cantidad de $100,000.00 concedida a la señora Fuertes por sus angustias y sufrimientos mentales, concluimos que son también excesivas a la luz de la parca y escasa prueba presentada. De un estudio cuidadoso de la regrabación de la prueba oral, surge que la única prueba presentada en apoyo de tal reclamación fueron las alegaciones de la señora Fuertes, vertidas durante su breve testimonio en la vista del 14 de enero de 2005, durante el cual ésta se limitó a declarar que la situación económica se complicó grandemente a causa de la reducción en los ingresos del señor Cámara. Indicó que a causa de ello, se *"afectaron terriblemente"* las relaciones con su familia, sintieron vergüenza ante los acreedores porque siempre fueron personas de orden y su esposo desarrolló una condición de salud por exponerse excesivamente al sol mientras trabajaba. Regrabación de la vista, 14 de enero de 2005. También expresó que sufrió mucho en vista de que el cese de los pagos de pensión del señor Cámara fue causado por su primo, el señor Fuertes, Presidente de Coco Rico.

No podemos avalar que ello amerite una indemnización de $100,000.00, cuando la señora Fuertes no demostró que obtuvo atención profesional o médica para sus alegados padecimientos emocionales, ni cualquier otra evidencia tendente a demostrar que tales angustias le provocaron daños reales de gran magnitud. Por lo cual, reducimos su indemnización a $15,000.00.

Por último, al amparo de la doctrina establecida en *Soc. de Gananciales v. Vélez & Asoc.,* 145 D.P.R. 508 (1998), y el Artículo 1054 de nuestro Código Civil, concluimos que el señor Cámara sólo tiene derecho al pago de

la compensación por retiro adeudada desde que el pago por tal concepto fue suspendido injustificadamente y en violación a lo pactado el 24 de noviembre de 1998.

Según destacó nuestro más alto Foro, quien sufra daños por motivo del quebrantamiento contractual tendrá a su favor una acción para recobrar los daños y perjuicios que le hayan sido causados. A tales efectos, señaló que *"[l]as acciones ex contractu se basan en el quebrantamiento de un deber que surge de un contrato expreso o implícito, y tienen por objeto que se cumplan las promesas sobre las cuales las partes otorgaron su consentimiento."* *Soc. de Gananciales v. Vélez & Asoc.*, *supra*, a la pág. 521.

La acción de daños al amparo del Artículo 1054 es el único remedio disponible en este tipo de caso. Sobre el particular, nuestro Tribunal expresó que *"[s]i el daño surge exclusivamente como consecuencia del incumplimiento contractual, la acción de daños ex contractu sería el único remedio disponible."* *Soc. de Gananciales v. Vélez & Asoc.*, *supra*, a las págs. 521-22. Lo anterior se desprende de las expectativas de las partes que suscriben un acuerdo y cuyos intereses se ven afectados adversamente por el incumplimiento de la otra parte. *Soc. de Gananciales v. Vélez & Asoc.*, *supra*.

Ahora bien, de la regrabación de la prueba oral surge claramente que quedó probado que la compensación por retiro del señor Cámara, así como la de otros ex-empleados de Coco Rico que disfrutaban de beneficios similares, era de duración vitalicia hasta su fallecimiento y, por tanto, por tiempo determinado. Así, pues, por tratarse aquí de una compensación por retiro por tiempo determinado, el señor Cámara sólo tiene derecho a recibir la remuneración por el período que abarca el contrato y la ganancia que haya dejado de obtener. Artículo 1059, 31 L.P.R.A. sec. 3023; *Soc. de Gananciales v. Vélez & Asoc.*, *supra*.

En nuestro ordenamiento jurídico, no procede la indemnización por concepto de angustias y daños mentales cuando se trata de incumplimiento contractual, salvo que se hubieran podido prever al tiempo de constituirse la obligación y fueran consecuencia necesaria de la falta de cumplimiento del contrato. Art. 1060 del Código Civil de P.R., 31 L.P.R.A. sec. 3024; *Soc. de Gananciales v. Vélez & Asoc.*, *supra*. Tal excepción es de aplicación al caso de autos, en vista de que el señor Cámara tampoco demostró de forma fehaciente los daños que alegadamente le fueron ocasionados, por lo cual no cabe hablar de la previsibilidad de daños que no han sido evidenciados. Concluimos que erró el foro sentenciador al conceder $100,000.00 por concepto de angustias y sufrimientos mentales al señor Cámara.

Es cierto que en el ámbito judicial se ha reconocido que el juez de instancia es quien tiene la oportunidad de ver a los testigos y observar su manera de declarar, apreciar sus gestos, titubeos, contradicciones, manerismos, dudas y vacilaciones e ir formando gradualmente en su conciencia la convicción de si dicen o no la verdad. *López Delgado v. Dr. Cañizares*, 163 D.P.R. ___ (2004), **2004 JTS 165**; *Argüello v. Argüello*, 155 D.P.R. ___ (2001), **2001 JTS 127**. Como resultado de ello, está, de ordinario, en mejor posición para determinar su credibilidad. Razón por la cual, como norma general, los tribunales apelativos no debemos intervenir con las indemnizaciones concedidas, **salvo que sean ridículamente bajas o exageradamente altas**. *S.L.G. Rodríguez v. Nationwide*, 156 D.P.R. ___, **2002 JTS 61**.

No obstante, adviértase que si bien, como norma general, no nos corresponde sustituir el criterio del foro recurrido por el nuestro, cuando queda demostrado que el foro recurrido actuó irrazonablemente, procede ejercer nuestra función revisora. Igualmente, podemos revisar en su totalidad las conclusiones de derecho. *Sepúlveda v. Departamento de Salud*, 145 D.P.R. 560 (1998).

Tal es la situación en el caso de autos, ya que, primeramente, estamos ante la ausencia total de prueba sobre los alegados daños sufridos por los apelados. Asimismo, según destacamos anteriormente, la cantidad concedida a la señora Fuertes por concepto de angustias y daños mentales conforme a la prueba presentada, según ésta surge de la grabación de los procedimientos, resulta excesiva. Por último, no procedía la concesión de $100,000.00 al

señor Cámara en adición a la compensación por retiro adeudada, ya que ello resulta contrario a la normativa jurídica establecida en *Soc. de Gananciales v. Vélez, supra,* y a las disposiciones antes citadas de nuestro Código Civil.

Como consecuencia de todo lo anterior, **confirmamos** la determinación del foro recurrido mediante la cual concedió al señor Cámara $300,000.00 por concepto de compensación por retiro que dejó de recibir desde noviembre de 1998 hasta el 28 de febrero de 2005, adicional al pago de $4,000.00 por cada mes que transcurra hasta la satisfacción total de la sentencia. Asimismo, **se confirma** lo relativo a la procedencia de un pago mensual de $4,000.00 al señor Cámara por el resto de su vida, el pago de los intereses por mora sobre cada pago que no fue efectuado desde el 24 de noviembre de 1998 a razón de 6% anual hasta que satisfaga su obligación y el pago de $60,000.00 por concepto de honorarios de abogado por la crasa temeridad de la parte apelante. Conclusiones de Derecho 21, 22 y 25, Apéndice del Recurso, páginas 35 y 36.

Por otro lado, modificamos la suma concedida a la señora Fuertes por concepto de daños y perjuicios, reduciendo los $100,000.00 a $15,000.00. Conclusión de Derecho 24, Apéndice del Recurso, página 36.

Por último, revocamos la cantidad de $100,000.00 por concepto de daños y perjuicios que fue concedida a la Sociedad Legal de Gananciales compuesta por el señor Cámara y la señora Fuertes. Conclusión de Derecho 23, Apéndice del Recurso, página 35. Además, revocamos la cantidad de $100,000.00 otorgada al señor Cámara por concepto de daños y perjuicios. Conclusión de Derecho 24, Apéndice del Recurso, página 36.

### III

Por los fundamentos antes expuestos, los cuales hacemos formar parte de esta sentencia, confirmamos parcialmente la misma en cuanto a la procedencia de la reclamación del pago por compensación por retiro otorgado en beneficio del señor Cámara, los intereses por mora, según fijados en la sentencia recurrida y sobre la concesión de honorarios de abogado por temeridad. A la vez, modificamos la misma en lo referente a la cuantía de la compensación por angustias mentales concedida a la co-apelada, Idalia Fuertes Sánchez, reduciendo la misma a la suma de $15,000.00. Así modificada, revocamos los otros extremos de la sentencia recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones