Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL (OATA-2024-130)[1]

| | | |
|---|---|---|
| BRETT S. JOHNSON; CHRISTINA K. JOHNSON<br><br>Apelantes<br><br><br>V.<br><br><br>AURELIO RUIZ LUCIANO; MARITZA I. FLORES GONZÁLEZ Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Apelados | KLAN202400896 | Apelación procedente del Tribunal de Primera Instancia, Sala de Guaynabo<br><br><br>Caso Núm.: GB2021CV00445<br><br><br>Sobre: Incumplimiento de contrato, Cumplimiento específico |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Marrero Guerrero, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 10 de diciembre de 2024.

Comparecen ante nos el Sr. Brett S. Johnson, la Sra. Christina K. Johnson y la Sociedad Legal de Gananciales compuesta por ambos (matrimonio Johnson o parte apelante) en solicitud de que revisemos una *Sentencia* emitida y notificada el 9 de septiembre de 2024 por el Tribunal de Primera Instancia, Sala de Guaynabo (TPI).[2] Por virtud del referido dictamen, el TPI reconsideró su determinación en denegar la solicitud de sentencia sumaria del matrimonio compuesto por el Sr. Aurelio Ruiz Luciano, la señora Maritza I. Flores González y la Sociedad Legal de Gananciales integrada por ambos (matrimonio Ruiz-Flores o parte apelada). En consecuencia, desestimó la causa de acción de la parte apelante ante el fundamento de que en el *Letter of*

---

[1] Debido a que el Juez Pagán Ocasio se encuentra fuera del tribunal por causas justificadas, se modificó la composición del panel, a tenor con la Orden Administrativa OATA-2024-130 de 21 de noviembre de 2024.
[2] Apéndice de *Apelación Civil*, Anejo 19, págs. 226-241.

*Intent* (carta de intención) suscrito por las partes se estableció que los acuerdos quedaron sujetos a una condición suspensiva incierta y futura de firmar un contrato de compraventa en una fecha posterior. Asimismo, resolvió que en la Cláusula 10 de la carta de intención se indicó que de no firmarse un contrato de compraventa por cualquier razón o ninguna razón, dicho acuerdo quedaría vencido y ambas partes estarían relevadas de todos sus derechos y obligaciones. El Foro apelado concluyó que la aludida cláusula constituyó un relevo de responsabilidad para ambas partes.

Por los fundamentos que expondremos a continuación, se adelanta la confirmación de la determinación apelada.

Veamos el trasfondo fáctico y procesal atinente a este recurso.

**I.**

El caso ante nuestra consideración tuvo su origen el 2 de julio de 2021, fecha en que el matrimonio Johnson presentó una *Demanda* contra el matrimonio Ruiz-Flores por incumplimiento de contrato y en solicitud de cumplimiento específico.[3] Mediante esta, alegó que, durante el mes de abril de 2021, realizó una oferta al matrimonio Ruiz-Flores para comprar su inmueble sito en Guaynabo, Puerto Rico por la suma de $750,000.00. Adujo que el 21 de abril de 2021, la parte apelada emitió una carta de aceptación de la referida oferta. A su vez, arguyó que el 23 de abril de 2021, las partes suscribieron una carta de intención, en la que el matrimonio Ruiz-Flores se comprometió a vender su inmueble al matrimonio Johnson.

Según se expresó en la *Demanda*, el 13 de mayo de 2021, el matrimonio Ruiz-Flores cursó un borrador de un contrato de compraventa, en el que se cambiaron los términos y las condiciones originalmente pactados. El matrimonio Johnson puntualizó que, el 3 de mayo de 2021, su representante legal envió una carta a la parte

---

[3] *Íd.*, Anejo 1, págs. 1-4.

apelada en la que se le requirió cumplimiento con la carta de intención. La parte apelante indicó que el 23 de junio de 2021, el matrimonio Ruiz-Flores notificó que no se formalizaría el contrato de compraventa. Por lo anterior, el matrimonio Johnson concretó que la celebración del contrato de compraventa y el cumplimiento con la carta de intención no podía quedar al arbitrio del matrimonio Ruiz-Flores, acción que le ocasionó angustias mentales y emocionales en una suma no menor de $20,000.00 por cada persona. Además, planteó que tenía la intención de vender su inmueble en San Juan una vez formalizado en contrato de compraventa del inmueble en Guaynabo, por lo que tenía derecho a ser compensado en la eventualidad que su propiedad depreciara durante el juicio.

El 16 de septiembre de 2021, el matrimonio Ruiz-Flores presentó una *Contestación a Demanda*.[4] En esta, esgrimió que las conversaciones entre las partes durante el curso de las negociaciones no constituyeron una oferta ni la perfección de un contrato al amparo del Código Civil de Puerto Rico, 31 LPRA sec. 5311 *et seq.* Además, alegó que en la carta de intención se introdujeron nuevos términos y condiciones que se desviaron de las conversaciones anteriores. El matrimonio Ruiz-Flores precisó que la carta de intención contenía condiciones suspensivas que estaban sujetas a la formalidad de la firma de un contrato de compraventa, la inspección de la propiedad, la entrega de la propiedad libre de cargas y gravámenes y la aprobación del financiamiento al matrimonio Johnson. Del mismo modo, afirmó que no quedó obligado a vender su inmueble por la mera firma de la carta de intención, ya que únicamente existió un precontrato o trato preliminar para conducir las negociaciones hasta formalizar un contrato de compraventa. Asimismo, argumentó que el matrimonio Johnson le remitió distintos borradores de un contrato

---

[4] *Íd.*, Anejo 2, págs. 5-13.

de compraventa que alteraron los términos y las condiciones previamente negociadas. Destacó que esto prolongó las negociaciones e impidió concretar la firma de un contrato de compraventa.

Luego de ocurrir varias incidencias procesales, el 27 de noviembre de 2023, el matrimonio Ruiz-Flores presentó una *Moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil y/o sentencia sumaria.*[5] En esta, la parte apelada solicitó la desestimación de la *Demanda* por no existir controversia de hechos esenciales y pertinentes ni una causa que justificara la concesión del remedio solicitado por el matrimonio Johnson. A su vez, peticionó que se dictara sentencia sumaria a su favor, a tenor con la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36. Sostuvo que los únicos asuntos litigiosos pendientes ante el TPI eran de estricto derecho, a los efectos de determinar lo siguiente:

> (1) si procedía el cumplimiento específico de vender su residencia principal al matrimonio Johnson por la cantidad de $750,000.00 en virtud de las obligaciones contraídas por las partes;
>
> (2) si la Cláusula 10 de la carta de intención titulada "Expiration of Offer" liberó al matrimonio Ruiz-Flores de vender su propiedad por el precio pactado, y
>
> (3) si la designación como Hogar Seguro de su residencia principal impidió al matrimonio Johnson obtener el remedio solicitado.

El matrimonio Ruiz-Flores indicó que, contrario a lo aducido por el matrimonio Johnson, no renunció a su derecho de hogar seguro al suscribir la carta de intención, toda vez que dicha protección era irrenunciable y cualquier pacto en contrario es nulo. Además, particularizó que la carta de aceptación del 21 de abril de 2021 constituyó el primer contrato entre las partes, el cual se novó posteriormente al suscribir la carta de intención del 23 de abril de 2021. En tal virtud, la parte apelada concibió que la carta de intención constituyó un segundo contrato que extinguió todas las

---

[5] *Íd.*, Anejo 7, págs. 33-55.

obligaciones contraídas en la carta de aceptación del 21 de abril de 2021. Asimismo, planteó que la carta de intención quedó supeditada a la firma de un contrato de compraventa en una fecha posterior, lo que constituyó una condición suspensiva incierta y futura. Por ello, manifestó que no se podía alegar cumplimiento específico sin que se satisficiera dicha condición suspensiva. Acentuó que, tras firmar la carta de intención, las partes continuaron por dos (2) meses en la negociación de un contrato de compraventa que nunca se perfeccionó, por lo que invocó su derecho a retirarse del acuerdo al amparo del Cláusula 10 de la carta de intención. La parte apelada estableció que al no firmarse el contrato de compraventa, la carta de intención quedó vencida y ambas partes quedaron liberadas de los derechos y las obligaciones allí contraídas.

El 11 de diciembre de 2023, el matrimonio Johnson presentó una *Moción en oposición a moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil y/o sentencia sumaria presentada por la parte demandante (SUMAC doc. 60) y para que se dicte sentencia sumaria parcial a favor de la demandante.*[6] En esta, indicó que los asuntos litigiosos que debían dirimirse por la vía sumaria eran los siguientes:

> (1) si hubo incumplimiento por parte del matrimonio Ruiz-Flores con su obligación de formalizar un contrato de compraventa;
>
> (2) si, como cuestión de derecho, procede exigir el cumplimiento específico del contrato de promesa bilateral de compraventa y requerir al matrimonio Ruiz-Flores vender el inmueble;
>
> (3) si a base de la Cláusula 10 de la carta de intención, se podía relevar al matrimonio Ruiz-Flores de su obligación, a pesar de que mantuvo silencio por dos (2) meses, a pesar de que desde abril de 2021 decidió que no vender el inmueble;
>
> (4) si el matrimonio Ruiz-Flores estaba impedido de ir contra sus propios actos;
>
> (5) si la posición del matrimonio Ruiz-Flores estaba vedada en virtud de la doctrina de abuso de derecho;

---

[6] *Íd.*, Anejo 8, págs. 56-138.

(6) si la designación de hogar seguro podía utilizarse para incumplir con lo pactado en un contrato de promesa bilateral de compraventa y evitar que se concedieran los remedios que procedían en derecho, como el cumplimiento específico, y

(7) si procedía dictarse sentencia sumaria a favor del matrimonio Johnson.

La parte apelante sostuvo que no estaba en controversia la existencia de un precontrato o trato preliminar encaminado a negociar la firma de un futuro contrato de compraventa, por lo que existía una promesa bilateral de compraventa que requería cumplimiento específico. Indicó que el matrimonio Ruiz-Flores incumplió su promesa bilateral en vista de que no perfeccionó contrato de compraventa y concluyó unilateralmente la vigencia del contrato preliminar. Asimismo, concretó que la parte apelada no podía invocar la Cláusula 10 de la carta de intención por el fundamento de que transcurrieron tres (3) días desde que se suscribió el documento sin que se formalizara el contrato de compraventa. Pues, expuso que las partes intercambiaron el *Purchase Option Contract* y el *Purchase Sales Agreement* por dos (2) meses. Por ello, entendió que la vigencia de la carta de intención no se venció al tercer día, sino el 23 de junio de 2021, cuando la representante legal del matrimonio Ruiz-Flores indicó que sus clientes dieron por vencida la vigencia de la carta de intención. Ante esto, arguyó que la parte apelada no podía ir en contra de sus actos, ya que su conducta creó un estado de derecho y llevó al matrimonio Johnson a creer que actuaba para formalizar la compraventa.

Por otro lado, el matrimonio Johnson esbozó que la parte apelada no podía levantar la defensa afirmativa de novación en la etapa de sentencia sumaria, ya que renunció a la misma al no plantearla en la contestación a la *Demanda*. Igualmente, puntualizó que la carta de intención del 23 de abril de 2021 no novó la carta de aceptación del 21 de abril de 2021, sino que ratificó la obligación conmemorada en el documento. Según las alegaciones del

matrimonio Johnson, la protección de hogar seguro que goza el matrimonio Ruiz-Flores no impidió que el TPI ordenara el cumplimiento específico de vender la propiedad, dado que dicha protección no se creó para evadir las responsabilidades y obligaciones que una parte contrajo con un tercero. Asimismo, expuso que si la *Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar*, Ley Núm. 95-2011, según enmendada, 31 LPRA sec. 1858 *et seq.*, reconocía el contrato de compraventa, igualmente permitía el contrato de promesa de venta. Especificó que este caso no versaba sobre una venta en pública subasta para cobrar una sentencia cuyo producto sería recibido por el acreedor que promovió la venta o ejecución, sino de una orden para que el matrimonio Ruiz-Flores cumpliera con lo que se obligó.

El 19 de diciembre de 2023, el Foro Primario emitió una *Resolución y Orden*, en la que decretó una prohibición de enajenar el inmueble en controversia, a tenor con la Regla 56.4 de Procedimiento Civil, *supra*, R. 56.4, y determinó que el matrimonio Johnson debía prestar una fianza por la suma $2,500.00.[7] Esto, toda vez que dicha parte demostró que tenía la probabilidad de prevalecer respecto a la existencia de un contrato de promesa bilateral de compraventa y su incumplimiento por el matrimonio Ruiz-Flores.

Tras varios trámites procesales, el 17 de abril de 2024, el TPI emitió una *Resolución* en la que declaró No Ha Lugar a la solicitud de desestimación y sentencia sumaria del matrimonio Ruiz-Flores y de sentencia sumaria del matrimonio Johnson.[8] El Tribunal *a quo* estableció que debía dirimirse mediante un juicio en su fondo la controversia sobre el contenido de las conversaciones entre las partes posterior a firmarse la carta de intención y su efecto en la

---

[7] *Íd.*, Anejo 10, págs. 163-174. Archivada y notificada el 21 de diciembre de 2024.
[8] *Íd.*, Anejo 15, págs. 194-207. Archivada y notificada el 18 de abril de 2024.

contratación. Además, el Foro Primario dispuso que existía controversia sobre los siguientes hechos:

1. Si surge de la primera oración del "Letter of intent" (LOI) que los acuerdos allí contraídos por las partes quedaron sujetos a una condición suspensiva incierta y futura, siendo en efecto esta la firma de un contrato de compraventa en una fecha posterior.

2. Si surge de la lectura de la cláusula 10 ("Expiration of Offer") del LOI que las partes pactaron que, de no firmarse el contrato de compraventa por cualquier razón o ninguna razón en absoluto, el LOI quedaría vencido y ambas partes quedaban relevadas de todos los derechos y obligaciones allí contraídas.

Ahora bien, el TPI consignó que los siguientes hechos estaban incontrovertidos:

1. Los demandados son los dueños en pleno dominio del inmueble sito en la Calle 1 #602, en la Urbanización Tintillo, en Guaynabo, Puerto Rico.

2. El 28 de marzo de 2012, la parte demandada otorgó la Escritura Pública Número 12, ante el Notario Yuralkys Gutiérrez Rocha designando el inmueble objeto de esta demanda como su Hogar Seguro.

3. El 21 de abril de 2021, el señor Ruiz, asistido por el corredor de bienes raíces Javi Rodríguez, redactó y remitió a los Johnson una carta, aceptando la oferta que les fue cursada para la compra de su residencia principal, por la cantidad de $750,000.

4. El 23 de abril de 2021, los demandados suscribieron un documento titulado "Letter of Intent (LOI)", el cual había sido firmado por los Johnson, el 22 de abril de 2021, obligándose mutuamente a los términos y condiciones allí acordados, en relación a la compraventa de la propiedad.

5. La primera oración del LOI, suscrito por las partes, lee de la siguiente forma:
   "Dear Dr. Aurelio Ruiz: Subject to the execution of a definitive and mutually acceptable agreement of purchase and sale ("Purchase Sale Agreement"), within three (3) days after the execution of his Letter of Intent (the "Contract Negotiation Period"), the undersigned offers to purchase the subject property in accordance with the following terms and conditions…".

6. El inciso 10 del LOI lee de la siguiente forma:
   "10. Expiration of Offer: This Letter of Intent shall constitute an open offer until the parties reach a decision. If the above outline of terms and conditions are acceptable, please indicate by signing below. All parties to these transactions intend that this proposal be superseded by the Purchase Agreement. In the meantime, all parties agree to proceed in accordance with the terms and conditions outlined in this Letter of

Intent, Seller understands the purpose of the Letter of Intent is to allow further investigation by both parties into the feasibility of entering into a formal agreement. This Letter of Intent is only binding on the parties during the Contract Negotiation Period. If the Purchase Agreement is not mutually executed within the Contract Negotiation Period for any reason whatsoever or no reason at all, this Letter of Intent shall expire and no party shall have any further rights or duties hereunder. Sellers shall not solicit other offers during the Contract Negotiation Period."

7. El LOI fue preparado por el Sr. Jorge Juan Ortiz Longo, corredor de bienes raíces de los Johnson.

8. La primera versión de contrato de compraventa, preparado por los Johnson, fue remitida para la consideración de los Ruiz, el 13 de mayo de 2021, siendo esto 20 días más tarde de la firma del LOI.

9. Posterior a la firma del LOI del 23 de abril de 2021, ambas partes continuaron sosteniendo conversaciones conducentes a la firma del contrato de compraventa. Dichas conversaciones se extendieron por un periodo de aproximadamente dos (2) meses.

10. El 23 de junio de 2021, la parte demandada, por conducto de su representación legal, informó vía correo electrónico, al representante legal de los Johnson que no se encontraba en posición de formalizar un acuerdo de compraventa, dando por concluida la vigencia de la carta de intención, al no haberse perfeccionado acuerdos mutuamente satisfactorios para todas las partes.

11. El contrato de compraventa entre las partes nunca se perfeccionó.

12. Los demandantes en este caso son: Brett S. Johnson, Christina K. Johnson y la sociedad legal de bienes gananciales compuesta por ambos.

13. Los demandantes están casados entre sí.

14. Los demandados, en este caso, son Aurelio Ruiz Luciano, Maritza I. Flores González y la sociedad legal de bienes gananciales compuesta por ambos.

15. Los demandados están casados entre sí, bajo el régimen de sociedad legal de gananciales.

16. El demandado, señor Ruiz, es dentista pediátrico.

17. Los demandados residen en el inmueble objeto de controversia desde el año 1990, comprando primero el solar en $125,000, donde construyeron la estructura.

18. Los demandados nunca han tasado la propiedad, aunque hubo un refinanciamiento.

19. Los demandados decidieron que querían vender su casa, para lo cual contrataron al corredor de bienes raíces el señor Javier Rodríguez.

20. Los demandados contrataron al corredor de bienes raíces, señor Javier Rodríguez, mediante una Autorización de Venta Exclusiva del 1ero de marzo de 2019, donde se estableció un precio sugerido de venta de $825,000.

21. La primera oferta que recibieron los demandados para la compra de la propiedad fue de los demandantes.

22. La oferta de los demandantes llegó a los demandados por unos textos que le envía el corredor de bienes raíces, el señor Javier Rodríguez, y mediante llamada telefónica.

23. Con fecha de 21 de abril de 2021, el codemandado, señor Ruiz, redactó el Anejo 2 (carta de aceptación) de la moción de sentencia sumaria, a base de la información que le dio el corredor de bienes raíces, el señor Javier Rodríguez, por teléfono.

24. El codemandado redactó el documento en su casa, entiende que lo hizo en la butaca de su cuarto.

25. En el documento redactado por el señor Ruiz, con fecha del 21 de abril de 2021, los demandados indicaron que aceptaban la oferta del "SR [JOHNSON]" (sic) por $750,000 para la compra del inmueble donde se incluye: planta eléctrica, cisterna, nevera, estufa, horno, horno de microondas, BBQ, columpios y todos los aires acondicionados.

26. La carta de aceptación del 21 de abril de 2021, fue firmada por ambos demandados.

27. La oferta se aceptó porque el demandado estaba de acuerdo después de haber negociado verbalmente, para lo cual había contratado al corredor de bienes raíces, el señor Javier Rodríguez, que era su agente.

28. La carta de aceptación (Anejo 2) fue remitida por la parte demandada a los demandantes.

29. El demandado admitió que el documento titulado "Letter of Intent", con fecha del 23 de abril de 2021, recoge lo mismo que los demandados habían aceptado en la carta de aceptación del 21 de abril de 2021, en cuanto al precio, que la propiedad se vendía "as is", y los distintos ítems o artículos que permanecerían en la casa.

30. Los términos y condiciones ("terms and conditions") en el documento titulado Letter of Intent se encuentran en las páginas 1 y 2 del documento. Se refiere el documento a los demandados como vendedor o "Seller" y a los demandantes como comprador o "Buyer".

31. El precio de la propiedad era $750,000, en condición "As Is Where Is Condition", la propiedad incluiría el generador, cisterna de agua, nevera, estufa, horno, horno micro hondas, BBQ, columpios y todos los aires acondicionados.

32. La Cláusula 10 del documento titulado Letter of Intent establece que el documento se firmaba si las partes

estaban de acuerdo con los términos y condiciones detallados y todas las partes firmaron el documento.

33. En la Cláusula 10 se acordó suscribir un contrato de compraventa.

34. También, se acordó cumplir con los términos y condiciones detallados. ("[a]ll parties agree to proceed in accordance with terms and conditions outlined in this Letter of Intent".)

35. Es un hecho incontrovertido que después de los tres (3) días de haberse firmado el documento por las partes, continuaron intercambios entre las partes para el contrato de compraventa.

36. El codemandado admitió que lo que quedaba pendiente después del documento titulado Letter of Intent era el contrato de compraventa, pero que ya se había acordado vender en $750,000, que se quedaban los distintos artículos en la propiedad con un cierre de 120 días.

37. Al codemandado le enviaron de las oficinas de su corredor de bienes raíces, el señor Javier Rodríguez, un documento que se titula Purchase Option Contract con el membrete de Javier Rodríguez, MiCorredor.com, para que lo revisara.

38. El documento titulado Purchase Option Contract fue a raíz de firmar el documento del 23 de abril de 2021.

39. El 13 de mayo de 2021, los demandantes reciben de los demandados un documento titulado Purchase Option Contract.

40. El codemandado en su deposición admitió que el documento titulado Purchase Option Contract se circuló entre las partes.

41. Admitió el codemandado que esto fue evolucionando y se le cambió el nombre a Purchase and Sales Agreement que es a lo que se refiere el documento titulado Letter of Intent.

42. Luego, el 19 de mayo de 2021, la parte demandante, a través de su corredor de bienes raíces, el señor Jorge Juan Ortiz Longo, envía el Purchase and Sales Agreement.

43. Posterior a la firma del Letter of Intent del 23 de abril de 2021, las partes continuaron en conversaciones, sobre el contrato de compraventa, por un periodo de aproximadamente dos (2) meses.

44. No fue hasta el 23 de junio de 2021, dos (2) meses más tarde, que la abogada de los demandados dio por terminada las conversaciones, indicando que sus clientes habían decidido no formalizar el contrato de compraventa y que daba por terminada la vigencia del documento. ("mis clientes dan por concluida la vigencia de la carta de intención".)

45. El codemandado había decidido que no iba a vender desde el mes de abril de 2021.

46. El Exhibit 6 del escrito de oposición a sentencia sumaria de la parte demandante (Anejo 8 en la deposición) son unos mensajes de WhatsApp, entre el codemandado y Javier Rodríguez.

47. El 23 de febrero de 2021, Javier Rodríguez le escribió al codemandado, sobre su propiedad, en Maralago, Palmas del Mar.

48. Ya para el 16 de abril de 2021, Javier Rodríguez le expresa al codemandado que está en espera de una oferta para el fin de semana y que la propiedad "se va" y después Maralago.

49. Le expresa Javier Rodríguez al codemandado que se había logrado subir la oferta a ese número final [$750,000], luego de discutir lo "que habíamos hablado", con lo que se acompaña un documento en PDF que era el documento titulado Letter of Intent.

50. El codemandado le indica a Javier Rodríguez "si me mudo pronto, no habría que esperar los 120 días si la compra es cash".

51. En el mensaje con fecha del 27 de abril de 2021, el corredor Javier Rodríguez le notificó al demandado el nombre de la licenciada Maribel Picorelli. Ya, a esa fecha, el demandado le había notificado que había decidido que no iba a vender la propiedad, que había decidido cancelar y no quería continuar con la venta.

52. El 29 de abril de 2021, Javier Rodríguez le indica al codemandado que le avisaría de la "cancelación" y que esperaba no tener problemas con el comprador.

53. Ya el codemandado había decidido desde abril de 2021 cancelar, que no quería continuar con la venta.

54. Esa decisión, de cancelar, ya se la había comunicado a Javier Rodríguez antes por teléfono.

No conforme, el 1 de mayo de 2024, el matrimonio Ruiz-Flores presentó una *Moción de Reconsideración*.[9] En esta, puntualizó que las controversias de hechos señaladas por el TPI eran asuntos de estricto derecho que no versaban sobre elementos subjetivos de intención, propósito mental, negligencia, ni estaba en disputa el factor de credibilidad. A su vez, indicó que el TPI incidió al considerar que la carta de intención representó un contrato bilateral de compraventa, toda vez que contenía una cláusula mediante la cual las partes podían retirarse de la negociación y quedar relevadas de todos los

---

[9] *Íd.*, Anejo 16, págs. 208-215.

derechos y las obligaciones que pactaron en dicho documento. Resaltó que la carta de intención constituyó una negociación preliminar con la intención de llegar a acuerdos mutuamente satisfactorios para las partes a ser suscritos en un contrato de compraventa que nunca se perfeccionó. Apuntó que la intención de las partes fue firmar el contrato de compraventa, pero que dicha acción nunca ocurrió. Además, planteó que las partes convinieron incluir la Cláusula 10 a la carta de intención, la cual estableció: "If the Purchase Agreement is not mutually executed within the Contract Negotiation Period for any reason whatsoever or any reason at all, this Letter of Intent shall expire and no party shall have any further rights or duties hereunder". Aludió que lo anterior constituyó un relevo de responsabilidad para ambas partes en cuanto a los derechos y las obligaciones en caso de que el contrato de compraventa no se perfeccionara por cualquier razón posible o por ninguna razón en absoluto. Sobre el particular, indicó que ambas partes otorgaron su consentimiento voluntariamente al contenido total e íntegro de la carta de intención, incluyendo la Cláusula 10 en la que se autorizó el vencimiento de dicho documento. Aseveró que no obró de mala fe en la negociación, ya que existía una cláusula válida en la carta de intención que le permitía retirarse de la misma sin obligación ulterior. Por ello, indicó que el TPI no debía relevar al matrimonio Johnson de cumplir con lo que se obligó al suscribir la carta de intención.

Por su parte, el 3 de mayo de 2024, el matrimonio Johnson presentó una *Moción para solicitar reconsideración parcial*.[10] Mediante esta, solicitó modificar o dejar sin efecto la determinación de hecho incontrovertible número 8 en la que se consignó que la primera versión del contrato de compraventa, preparada por el matrimonio Johnson, se remitió para la consideración del matrimonio Ruiz-Flores

---

[10] *Íd.*, Anejo 17, págs. 216-218.

el 13 de mayo de 2021, siendo veinte (20) días más tarde de la firma de la carta de intención. Pues, especificó que, al contrario, debía mencionar que fue el matrimonio Ruiz-Flores quien envió un borrador el 13 de mayo de 2021.

El 24 de mayo de 2024, el matrimonio Johnson presentó una *Oposición a Moción de Reconsideración (SUMAC doc. 95)*.[11] En esta, indicó que el matrimonio Ruiz-Flores no podía renegar que en la contestación a la *Demanda* admitió que existió un precontrato o una promesa bilateral de compraventa encaminada a realizar negociaciones para perfeccionar un contrato de compraventa, por lo que procedía exigirse el cumplimiento específico. Por otro lado, señaló que los términos y las condiciones de la carta de intención continuaron vigentes posterior al tercer día de suscribirse, ya que continuaron las negociaciones. Por ello, precisó que la parte apelada no podía ir en contra de sus actos. Por último, resaltó que desde abril de 2021, el matrimonio Ruiz-Flores determinó no vender su inmueble aun cuando cursó comunicaciones por dos (2) meses para suscribir el contrato de compraventa.

El 9 de septiembre de 2024, el TPI emitió una *Sentencia*,[12] en la que declaró Ha Lugar a la *Moción de Reconsideración del matrimonio Ruiz-Flores* y, en su consecuencia, desestimó la *Demanda* en su totalidad. A su vez, el Foro Primario se pronunció Ha Lugar con respecto a la *Moción para Solicitar Reconsideración Parcial* del matrimonio Johnson, por lo que enmendó la determinación de hecho incontrovertible número 8 de la siguiente forma: "El 13 de mayo de 2021, actuando a base del acuerdo de 23 de abril de 2021, la parte demandada, a través de su corredor, cursó un borrador del contrato de compraventa para la consideración de los demandantes".

---

[11] *Íd.*, Anejo 18, págs. 219-225.
[12] *Íd.*, Anejo 19, págs. 226-241.

El Foro Primario resolvió que de la carta de intención surgió que los acuerdos contraídos entre las partes quedaron sujetos a la condición suspensiva incierta y futura de la firma de un contrato de compraventa en una fecha posterior. Además, que en la referida carta se plasmó que de no firmarse el contrato de compraventa por cualquier razón o ninguna razón en absoluto, quedaría vencida y ambas partes quedaban relevadas de todos los derechos y las obligaciones allí contraídas. El TPI consignó que esto constituyó un relevo de responsabilidad para ambas partes en cuanto a sus derechos y obligaciones.

Inconforme, el 4 de octubre de 2024, el matrimonio Johnson presentó un recurso de apelación ante este Foro apelativo, en el que señaló que el TPI incidió al cometer los siguientes errores:

1. ERRÓ EL TPI AL DICTAR SENTENCIA SUMARIA DECRETANDO LA DESESTIMACIÓN DE LA DEMANDA EN SU TOTALIDAD EN CONTRA DEL DERECHO APLICABLE, LAS DOCTRINAS DE ABUSO DE DERECHO, ACTOS PROPIOS Y LAS DETERMINACIONES DE HECHOS EN LA SENTENCIA SUMARIA, EN ESPECIAL, LA DETERMINACIÓN DE HECHO NÚM. 8 DE DONDE SURGE QUE EL PRIMER BORRADOR DEL CONTRATO DE COMPRAVENTA LO ENVIÓ LA APELADA EL 13 DE MAYO DE 2021, CASI UN MES LUEGO DE SUSCRITA LA PROMESA BILATERAL DE COMPRAVENTA.

2. ERRÓ EL TPI AL CONFUNDIR FIGURAS JURÍDICAS Y RESOLVER QUE EL CONTRATO OBJETO DE CONTROVERSIA SE TRATABA DE UN CONTRATO DE OPCIÓN, CUANDO LAS DETERMINACIONES DE HECHOS EN LA SENTENCIA SUMARIA ESTABLECEN QUE SE TRATABA DE UN CONTRATO DE PROMESA BILATERAL DE COMPRAVENTA.

En atención a los errores planteados por la parte apelante, procedemos a pormenorizar la normativa jurídica atinente al recurso.

**II.**

**A. Sentencia Sumaria**

La sentencia sumaria es un mecanismo procesal que permite que un caso se disponga ágilmente, sin la celebración de un juicio, siempre que no se presenten controversias genuinas de hechos materiales. *Cruz, López v. Casa Bella y otros*, 2024 TSPR 47, 213 DPR ___ (2024); *Birriel Colón v. Econo y otro*, 2023 TSPR 120, 213 DPR ___

(2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 334 (2021). A esos efectos, un hecho material es uno esencial y pertinente, que puede afectar el resultado de la reclamación conforme al derecho sustantivo aplicable. *Cruz, López v. Casa Bella y otros*, *supra*; *Banco Popular v. Posada*, 2024 TSPR 62, 213 DPR ___ (2024); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010); véase, además, Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1. Además, la controversia sobre el hecho material debe ser real. *Ramos Pérez v. Univisión, supra*. En otras palabras, debe ser de calidad suficiente para que el juzgador dirima por virtud de un juicio plenario. *Íd.*

Cónsono con lo anterior, la Regla 36.3(e) de Procedimiento Civil, *supra*, R. 36.3 (e), establece que procede dictar una moción de sentencia sumaria si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas u otra evidencia demuestran que no existe una controversia real sustancial en torno a un hecho esencial y pertinente. Véase, además, *Birriel Colón v. Econo y otro, supra*; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

Ahora bien, no es aconsejable dictar sentencia sumaria cuando existe controversia sobre asuntos de credibilidad o sobre aspectos subjetivos como la intención, el propósito mental o la negligencia. *Cruz, López v. Casa Bella y otros, supra*; *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263, 278 (2021).

La parte que se opone a la solicitud de sentencia sumaria debe refutar los hechos materiales que entienda están en disputa con evidencia sustancial. *Birriel Colón v. Supermercado Los Colobos, supra*; *SLG Fernández-Bernal v. RAD-MAN et al., supra*, págs. 336-337. Ahora bien, si la petición de sentencia sumaria está sustentada con declaraciones juradas u otra prueba, la parte que se opone no

puede descansar en meras alegaciones, sino que debe contestar de una forma tan detallada y específica como lo haya hecho la parte promovente. *Birriel Colón v. Econo y otro, supra*; *Ramos Pérez v. Univisión, supra*, pág. 215; Regla 36.3 (c) de Procedimiento Civil, *supra*, R. 36.3 (c). De lo anterior, incluso si no se presenta prueba para controvertir la evidencia presentada, ello no conduce a la concesión automática de una solicitud de sentencia sumaria. *Birriel Colón v. Econo y otro, supra*; *SLG Fernández-Bernal v. RAD-MAN et al., supra*, pág. 337.

Respecto a la oposición a una solicitud de sentencia sumaria, se sostiene que, la Regla 36.3 (b) de Procedimiento Civil, *supra*, R. 36.3 (b), establece que, "[l]a contestación a la moción de sentencia sumaria deberá ser presentada dentro del término de veinte (20) días de su notificación. . .". Por ello, "[s]i la parte contraria no presenta la contestación a la sentencia sumaria en el término provisto en esta regla, se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal". *Íd.*

En *Meléndez González et al. v. M. Cuebas, supra*, el Tribunal Supremo estableció un estándar que este Tribunal de Apelaciones debe emplear al revisar las concesiones o denegatorias de una solicitud de sentencia sumaria.

En primer lugar, el Tribunal de Apelaciones se encuentra en la misma posición que el tribunal de instancias al revisar una solicitud de sentencia sumaria, por lo que está llamado a llevar a cabo una revisión *de novo*, de conformidad con la Regla 36 de Procedimiento Civil, *supra*, R. 36. En tal ejercicio, no se puede considerar evidencia que las partes no presentaron ante el Foro *a quo*, y se debe examinar el expediente de la forma más favorable hacia la parte opositora de la moción de sentencia sumaria. *Meléndez González et al. v. M. Cuebas, supra*, pág. 116.

En segundo lugar, el Tribunal apelativo debe revisar que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos de la Regla 36 de Procedimiento Civil, *supra*, R. 36 y los criterios discutidos en los casos *SLG Zapata- Rivera v. J.F. Montalvo*, *supra* y *Meléndez González et al. v. M. Cuebas, supra.*

En tercer lugar, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. *Íd.* De haberlos, se debe exponer los hechos materiales en controversia y los incontrovertidos, a tenor con la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. Véase *Meléndez González et al. v. M. Cuebas, supra.*

En cuarto lugar, si el Tribunal de Apelaciones determina que no existen hechos materiales en controversia, procederá a revisar si el Foro Primario aplicó correctamente el derecho. *Íd.*, pág. 119.

### B. Contrato

En otro extremo, "[el] contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones". Artículo 1230 del Código Civil, *supra*, sec. 9751. Una vez constituido aplica el principio de *pacta sunt servanda* en que las partes se comprometen a cumplir con lo pactado. *PRFS v. Promoexport*, 187 DPR 42, 52 (2012); *BBPR v. Sunc. Talavera*, 174 DPR 686 (2008). En tal sentido, "[lo] acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley". Artículo 1233 del Código Civil, *supra*, sec. 9754. De esta forma, la contravención de una obligación contractual acarrea exigir el pago de una indemnización o el cumplimiento específico de las cláusulas pactadas. *PRFS v. Promoexport, supra.*

### C. Contrato Preliminar

Previo a perfeccionarse un contrato existe una etapa preliminar preparatoria conocida como contrato preliminar, contrato

preparatorio, precontrato o promesa de contrato. *Íd.*; M. R. Garay Aubán, *Código Civil: Obligaciones y Contratos*, 2da. ed., San Juan, Ed. SITUM, 2021, T. IV, pág. 232. En esta previa etapa, ocurre un proceso interno de formación del contrato que comprende los tratos y las negociaciones preliminares. *PRFS v. Promoexport, supra*, págs. 52-53. A saber, durante este proceso, las partes sostienen conversaciones en las que se discuten, se proyectan, se observan y se sugieren los términos que servirán para establecer el contrato. *Íd.*, pág. 53. Pues, "[la] finalidad práctica reside en que puede contratarse en forma preliminar cuando no es posible o no es deseado efectuar el contrato mismo". M. R. Garay Aubán, *op cit.*

La Exposición de Motivos del Código Civil de Puerto Rico, *supra*, se expone lo siguiente:

> Este Código define el contrato como el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en las formas prescritas por la ley, para crear, regular, modificar, o extinguir obligaciones.
> Se regula la figura del contrato preliminar, también conocido como contrato preparatorio, precontrato o promesa de contrato. En el contrato preliminar, las partes se obligan a celebrar un contrato futuro. El contrato preliminar se denomina opción [se] le atribuye decidir a una sola de las partes, la celebración del contrato futuro. Las partes quedan obligadas por la buena fe a colaborar, proporcionar información relevante, mantener la confidencialidad y conservar el bien.

Cónsono con lo anterior, el Artículo 1235 del Código Civil de Puerto Rico, *supra*, sec. 9756, dispone que "[por] el contrato preliminar[,] las partes se obligan a celebrar un contrato futuro". Dicho contrato no está sujeto a cumplir con las formalidades que debe satisfacer el contrato futuro. *Íd.* Ahora, "[si] la parte requerida se niega al otorgamiento del nuevo contrato, el tribunal puede exigir a la misma estricto cumplimiento". Artículo 1235 del Código Civil de Puerto Rico, *supra*, sec. 9756. Por otro lado, el contrato preliminar unilateral en el que sólo una parte posee la facultad de decidir sobre la celebración del contrato futuro, se denomina opción. Artículo 1235

del Código Civil de Puerto Rico, *supra*, sec. 9756. Dicha opción constituye un derecho personal. M. R. Garay Aubán, *op cit.*, pág. 231.

Independientemente de la forma en que las partes actúen, puede que no ocurra la perfección del contrato sobre el cual mediaron los tratos preliminares. *PRFS v. Promoexport, supra*, pág. 69. Esto, ya que en nuestro ordenamiento jurídico nadie está obligado a contratar. *Íd.*, pág. 55; *Prods. Tommy Muñiz v. COPAN*, 113 DPR 517, 526 (1982). Al efecto, las partes ostentan la prerrogativa de retraerse de las negociaciones durante la fase precontractual. *PRFS v. Promoexport, supra*, pág. 55. No obstante, tal ejercicio puede imponer responsabilidad de realizarse de forma abusiva, a tenor con la culpa *in contrahendo. Íd.* Ahora, la culpa *in contrahendo* se reconoce cuando una de las partes actúa intencionalmente, mediante dolo, fraude, abuso de derecho o negligencia. *Colón v. Glamourous Nails*, 167 DPR 33, 46 (2006). Pues, durante la fase precontractual, las partes deben actuar de conformidad con la buena fe. *Íd.*, pág. 44; *PRFS v. Promoexport, supra*, pág. 56; *Prods. Tommy Muñiz v. COPAN, supra*, págs. 526-527. Para determinar que medió culpa en la terminación de un trato preliminar se debe considerar las siguientes circunstancias de rompimiento de las negociaciones: (1) el desarrollo de las negociaciones; (2) cómo comenzaron las negociaciones; (3) el curso que siguieron las negociaciones; (4) la conducta de las partes durante el transcurso de las negociaciones; (5) la etapa en que se produjo el rompimiento, y (6) las expectativas razonables de las partes en la conclusión del contrato, así como otras circunstancias a tenor con los hechos particulares del caso. *Prods. Tommy Muñiz v. COPAN, supra*, pág. 530. Sin embargo, el deber de indemnizar el rompimiento culposo de los tratos preliminares alcanza, de ordinario, sólo el interés negativo que conlleva la reparación de los gastos sufridos y las pérdidas patrimoniales que se derivaron del proceder arbitrario

de la parte culpable. *PRFS v. Promoexport, supra,* pág. 59; *Colón v. Glamourous Nails, supra*, pág. 52.

### D. Opción de compra

La opción de compra como derecho real "es el derecho que faculta a su titular para que decida durante un plazo determinado, mediante la manifestación de su aceptación, el perfeccionamiento del contrato de compraventa que ha sido ya acordado en todos sus aspectos fundamentales y secundarios y a cuyo cumplimiento se mantiene comprometido el concedente durante el plazo prefijado". Artículo 1029 del Código Civil de Puerto Rico, *supra,* sec. 8821. A saber, mediante el contrato de opción de compra, el promitente le concede al optante el derecho exclusivo de decidir unilateralmente si comprará un inmueble perteneciente al promitente dentro del período definido por las partes. *SLG Irizarry v. SLG García,* 155 DPR 713, 722 (2001); *Rosa Valentín v. Vázquez Lozada,* 103 DPR 796 (1975). Los elementos esenciales de la opción de compra son los siguientes:

> (1) se concede al optante la facultad de decidir unilateralmente si celebrará el contrato principal (la compra y venta) sin ninguna obligación por parte de éste;
>
> (2) dicha concesión tiene carácter de exclusividad;
>
> (3) se establece un plazo para ejercitar la opción; y
>
> (4) no existe otra condición que no sea la voluntad del optante. *SLG Irizarry v. SLG García, supra.*

Por ello, es un contrato unilateral, toda vez que el optante no posee la obligación de adquirir el inmueble, mientras que el promitente está compelido a venderle. *Íd.* Pues, de lo contrario, si el ejercicio de la opción se supedita a eventos que requieran la participación del promitente, se destruye el carácter unilateral del contrato. *Matos, González v. SLG Rivera-Freytes,* 181 DPR 835, 848 (2011). Asimismo, se trata de un contrato preliminar encaminado al eventual otorgamiento de un contrato de compraventa. *SLG Irizarry v. SLG García, supra.*

### E. Doctrina de los actos propios

La doctrina de los actos propios emana del principio general de derecho que exige proceder de buena fe. *Domenech v. Integration Corp. et al.*, 187 DPR 595, 621 (2013); *Santiago et al. v. Rodríguez et al.*, 181 DPR 204, 217 (2011); *Corraliza v. Bco. Des. Eco.*, 153 DPR 161, 163 (2001). Pues, a nadie le es lícito obrar contra sus propios actos. *Íd.* La doctrina de los actos propios procura que no se obre en contra de sus actos ni se asuma una conducta contradictoria a una actuación previa que generó expectativas en quien confió mediante ese obrar. *Íd.* Esta doctrina protege la confianza que se depositó en estos actos, el interés social y la consecución del ideal de justicia. *Sánchez v. Baloncesto Superior Nacional*, 2024 TSPR 65; *Alonso Piñero v. UNDARE, Inc.*, 199 DPR 32, 55 (2017).

Para que aplique la doctrina de los actos propios se requiere que concurran tres (3) elementos: (1) una conducta determinada de un sujeto; (2) que generó una situación contraria a la realidad que sea susceptible de influir en la conducta de otro, y (3) que sea basada en la confianza de otra parte que procedió de buena fe y que, por ello, obró de una manera que le causaría un perjuicio si se defrauda su confianza. *Vivoni Farage v. Ortiz Carro*, 179 DPR 990, 1010-1011 (2010); *Corraliza v. Bco. Des. Eco., supra*; *Int. General Electric v. Concrete Builders*, 104 DPR 871, 878 (1976).

Esbozada la normativa jurídica, procedemos a aplicarla a los hechos que nos conciernen.

### III.

En el presente caso, el matrimonio Johnson planteó como primer error que el Foro Primario incidió al dictar sentencia sumaria en su contra y desestimar en su totalidad la *Demanda* que presentó por estar en contravención con el derecho aplicable y las determinaciones de hechos. Por otro lado, como segundo señalamiento de error, la parte apelante indicó que erró el TPI al

entender que la figura jurídica aplicable a la carta de intención suscrita por las partes era opción de compra, ya que se trataba de un contrato de promesa bilateral de compraventa.

En esencia, el matrimonio Johnson subrayó que ambas partes estuvieron contestes con las determinaciones de hechos formuladas por el Foro Primario, por lo que este Tribunal no tenía que revisar dichas determinaciones. En cambio, la parte apelante indicó que el TPI actuó contrario a las referidas determinaciones de hechos al desestimar la *Demanda* ante el presunto relevo de responsabilidad por la expiración del contrato. Especificó que el Foro apelado incidió al cimentar su decisión en que los acuerdos contraídos por virtud de la carta de intención dependían de que se firmara un contrato de compraventa dentro del término de tres (3) días desde que se suscribió el documento. Ello, pues manifestó que el matrimonio Ruiz-Flores admitió que después de los tres (3) días de firmar la carta de intención, las partes se cursaron comunicaciones dirigidas a suscribir el contrato de compraventa. En particular, planteó que en la determinación de hecho número 8 se estableció que el 13 de mayo de 2021, el matrimonio Ruiz-Flores cursó un borrador del contrato de compraventa para la consideración del matrimonio Johnson. Ante ello, cuestionó que el contrato de promesa bilateral de compraventa hubiese expirado al tercer día de firmada la carta de intención, ya que el matrimonio Ruiz-Flores envió el primer borrador del contrato de compraventa veinte (20) días posterior a suscribirse y concluyó su vigencia dos (2) meses después. Por lo anterior, la parte apelante concretó que el matrimonio Ruiz-Flores estaba impedido de ir en contra de sus actos, máxime cuando dio la impresión de que actuó en base a los términos y las condiciones de las cartas de aceptación e intención. Al efecto, indicó que la conducta de la parte apelada creó un estado de derecho, que influyó en su conducta y lo llevó a creer que actuó para formalizar la compraventa. Asimismo, afirmó que el

matrimonio Ruiz-Flores abusó de su derecho e incumplió con un proceder de buena fe. Esto, al considerar que la parte apelada guardó silencio por dos (2) meses sobre la decisión que tomó en abril de 2021 de no vender su inmueble, creando así la impresión de que formalizaría el contrato de compraventa. Por ello, la parte apelante concibió que la vigencia de la carta de intención no venció en el término de tres (3) días desde que se suscribió.

Por otro lado, el matrimonio Johnson esbozó que el TPI erróneamente analizó que el acuerdo entre las partes constituyó un contrato de opción de compra, en vista de que se trató de una promesa bilateral de compraventa. En este sentido, indicó que de las determinaciones de hechos formuladas por el Foro apelado surgió que el matrimonio Ruiz-Flores se obligó a vender su inmueble y la parte apelante a comprarlo por el precio de $750,000.00. Además, indicó que el TPI no podía sustraer la admisión de la parte apelada en que existió un precontrato, por lo que quedaba pendiente un futuro contrato: la compraventa.

Por su parte, el matrimonio Ruiz-Flores arguyó que el TPI cometió el error de enmendar la determinación de hecho número 8, toda vez que lo único que le envió al matrimonio Johnson el 13 de mayo de 2021 fue el *Purchase Option Contract* que luego se convirtió en el *Purchase and Sales Agreement* que la parte apelante remitió el 19 de mayo de 2021 a través de su corredor. No obstante, percibió que el Foro Primario actuó correctamente al desestimar la causa de acción del matrimonio Johnson al regirse por las normas generales de las obligaciones y los contratos y la carta de intención, la cual se configuró como la ley entre las partes. Por ello, la parte apelada indicó que no abusó del derecho, toda vez que actuó de conformidad con la Cláusula 10 de la carta de intención, la cual expresamente estableció que de no firmarse el contrato de compraventa por cualquier razón o ninguna razón en absoluto, la referida carta quedaría vencida y

ambas partes quedarían relevadas de todos los derechos y las obligaciones allí contraídos. Así las cosas, el matrimonio Ruiz-Flores entendió que no excedió de los límites del derecho que le concedió la Cláusula 10 de la carta de intención. A saber, sostuvo que continuó con las negociaciones posterior al tercer día de firmar la carta de intención sin el compromiso de otorgar el contrato de compraventa. Esto, al presuntamente creer de buena fe que las partes podían llegar a acuerdos mutuamente satisfactorios y firmar el contrato de compraventa, aunque dicho resultado no se materializó. Según el matrimonio Ruiz-Flores, al transcurrir el período de negociación de tres (3) días a partir de la firma de la carta de intención, ninguna parte estaba obligada a otorgar el contrato de compraventa. Empero, esgrimió que la continuación de las conversaciones posteriores al período de negociación de tres (3) días no dejaron sin efecto los términos acordados en la carta de intención. Con respecto a la doctrina de los actos propios, la parte apelada alegó que ambas partes crearon el estado de derecho al negociar y firmar la carta de intención que influyó en la conducta de todos.

El matrimonio Ruiz-Flores entendió que, independientemente se le denominara carta de intención o promesa bilateral de compraventa, las partes suscribieron un contrato preliminar en el que se obligaron a celebrar un contrato futuro, pero que no se perfeccionó por no satisfacerse la condición suspensiva de firmar un contrato de compraventa.

Tras evaluar los planteamientos de ambas partes, nos encontramos en posición de resolver.

Como cuestión de umbral, nos corresponde evaluar el asunto relacionado a las solicitudes de sentencia sumaria de ambas partes. Al no existir controversia sobre los hechos materiales y esenciales formulados por el Foro Primario, nos atañe revisar si el TPI aplicó correctamente el derecho en su determinación.

La parte apelante señaló como error que el TPI resolvió que el contrato objeto de controversia se trataba de un contrato de opción. A pesar de no encontrar una determinación específica del TPI en que la carta de intención suscrita el 23 de abril de 2021 constituyó un contrato de opción de compra, ambas partes tienen razón en que dicha figura jurídica no es aplicable a este caso. Como correctamente adujeron ambas partes, el mismo representó un contrato preliminar en el que el matrimonio Ruiz-Flores se comprometió a vender su inmueble en Guaynabo y el matrimonio Johnson a comprarlo dentro del período de negociación de tres (3) días desde que se firmó la carta de intención. Conviene señalar que la opción de compra es un contrato unilateral en el que el optante posee el derecho exclusivo de decidir si se perfecciona el contrato de compraventa dentro del plazo otorgado para ejercitar dicha opción, sin que exista otra condición que no sea la voluntad del optante. Véase *SLG Irizarry v. SLG García, supra.* En este caso, las partes pactaron lo siguiente en la carta de intención: "Subject to the execution of a definitive and mutually acceptable agreement of purchase and sale ("Purchase Sale Agreement"), within three (3) days after execution of this Letter of Intent (the "Contract Negotiation Period", the undersigned offers to purchase the subject property […])". Por ello, no concurrió el elemento de unilateralidad, en vista de que ambas partes debían negociar hasta firmar el futuro contrato de compraventa. El matrimonio Johnson no tenía el derecho exclusivo a decidir sobre la celebración del contrato de compraventa, ya que el mismo quedó sujeto a una negociación y a la firma de ambas partes, destruyendo así el carácter unilateral que supone un contrato de opción de compra. Véase *Matos, González v. SLG Rivera-Freytes, supra.*

Ahora bien, en la Cláusula 10 de la carta de intención se estableció que "[this] Letter of Intent is only binding on the parties during the Contract Negotiation period. If the Purchase Agreement is

not mutually executed within the Contract Negotiation Period for any reason whatsoever or no reason at all, this Letter of Intent shall expire and no party shall have any further rights or duties hereunder." De lo anterior, surgió clara y expresamente que los términos y las condiciones de la carta de intención vincularon a las partes sólo dentro del período de negociación de tres (3) días desde que se firmó el aludido documento. Además, tanto el matrimonio Johnson como el matrimonio Ruiz-Flores acordaron que si el contrato de compraventa no se formalizaba dentro del período de negociación por cualquier motivo o sin motivo alguno, la carta de intención caducaría, al igual que los derechos y las obligaciones concedidos en susdicho documento. En vista de que las partes no suscribieron el futuro contrato de compraventa dentro del período de negociación, los derechos y las obligaciones concedidos en la carta de intención caducaron, sin más. De la referida carta de intención emanó que su vigencia venció al tercer día desde que se suscribió sin que se firmara el contrato de compraventa. Por ello, el TPI no cometió error al determinar que los acuerdos contraídos en la carta de intención, que constituyó la ley entre las partes, quedaron sujetos a la firma de un contrato de compraventa dentro del período de negociación. A su vez, TPI no se equivocó al resolver que al no firmarse el contrato de compraventa dentro del período pactado por ambas partes por cualquier razón o ninguna, la carta de intención quedó vencida y ambas partes quedaron relevadas de los derechos y las obligaciones allí pactadas. Como bien estableció el TPI, esto constituyó un relevo de la responsabilidad de ambas partes.

Así las cosas, el hecho de que las partes sostuvieron conversaciones relacionadas al contrato de compraventa posterior a caducar el período de negociación no significó que se revirtieron los términos y las condiciones de la carta de intención. La parte apelante no presentó prueba alguna que nos haga entrever que las partes

acordaron que los términos y las condiciones alcanzadas en la carta de intención prosiguieron vigentes posterior al período de negociación. En tal sentido, la doctrina de los actos propios no es es de aplicación a los hechos de este caso, toda vez que el matrimonio Johnson no demostró ni podría establecer que la conducta del matrimonio Ruiz-Flores generó una situación contraria a los acuerdos establecidos en la carta de intención, que influyó en su conducta y que defraudó su confianza al descansar y actuar en base a ella.

Por lo anterior, concluimos que no erró el TPI al dictar sentencia sumaria y desestimar la causa de acción objeto de este recurso.

**IV.**

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones